J. Mack JONES, Appellant,

v.

TEXAS FARMERS TELEPHONE CO.,
Inc., Appellee.

No. 10720.

Court of Civil Appeals of Texas.

Austin.

Feb. 3, 1960.

Jones, Phillips & Watkins, Dallas, for appellant.

Skelton, Bowmer & Courtney, Temple, William S. Lott, Georgetown, for appellee.

GRAY, Justice.

This appeal is from an order overruling appellant's plea of privilege to be sued in Navarro County, the county of his residence.

Appellee, The Texas Farmers' Telephone Company, Inc., a corporation domiciled in Bell County, sued appellant, J. Mack Jones, a resident of Navarro County, to cancel 50 shares of its capital stock issued and delivered to appellant. Appellee alleged that by written contracts it employed appellant to perform engineering and mapping services for it and that it paid him, in money, for all work done and for all services performed. It further alleged that during the life of the above contracts appellant represented to its officers that he needed to borrow money and that if they would issue to him 50 shares of the capital stock of appellee as an accommodation he would use the stock to obtain a loan and that the only reason he wanted such stock was to use it as collateral for said loan; that when he repaid the loan he would return the stock; that appellee's officers believed said representations and relying thereon issued said stock to appellant; that said representations were false and fraudulent, were at the time known to appellant to be false and that the same were made for the purpose of inducing said officers to issue said shares of stock to appellant; that but for such representations said officers would not have issued said stock, and that said fraud was committed in Bell County and that said shares of stock were delivered there. It alleged that appellant has not paid any consideration for said stock and has not performed any labor or services, or furnished any property, in payment therefor; that the issuance of said stock violated section 6 of Art. 12 of the Constitution of Texas, Vernon's Ann.St., and is void; that the acquisition of the stock by appellant constitutes a fraud as to appellee and its stockholders, that it has made demand of appellant to surrender said stock which demand he has and still does refuse.

Appellee alleged, in the alternative, that appellant falsely and fraudulently represented to its officers that he had performed more work and services under the above mentioned contracts than he had performed and that he was entitled to receive more compensation than he was actually entitled to; that he knew such representations were false and intended that in reliance thereon the said stock would be issued to him; that appellee's officers believed and relied on such representations and on the basis thereof the said stock was issued to appellant; that but for such false and fraudulent representations the said stock would not have been issued, and that said false and fraudulent representations were made in Bell County and said shares of stock were issued and delivered there.

Appellant filed his plea of privilege which was controverted and at a nonjury trial it was overruled.

At appellant's request the trial court filed findings of fact and conclusions of law. He found that appellee was engaged in building rural telephone lines in Bell County under the R.E.A. program of the Federal Government and obtained a loan of $401,000 from the R.E.A.; that appellee was required to employ an engineer to perform engineering and mapping services for the construction of said telephone lines; that it employed appellant, an approved engineer; that inspectors for R.E.A. would periodically inspect the work and approve progress payments to the engineer and others; that payments were not to be made unless previously approved by the R.E.A. inspectors; that while the work under appellee's contracts with appellant was in progress appellant approached appellee's officers

"* * * and represented to them that he needed to borrow some money and that if they would issue him 50

shares of stock of the corporation as an accommodation and without his paying anything therefor, he would use this stock as collateral to obtain a loan and when he finished his work for plaintiff, he would either return the 50 shares of stock or he would pay for the stock, and that the only reason he wanted the stock was to use it as security for the purpose of obtaining the loan. The officers of plaintiff corporation believed said representations of the defendant and relied upon the same and issued to him on or about July 24, 1952, 50 shares of stock in the plaintiff corporation, each share being of the reasonable cash market value of $100.00 each and all of said shares being of the value of $5,000.00. The said representations were made by defendant to the officers of the plaintiff in Bell County, Texas and the shares of stock were delivered by plaintiff to defendant in Bell County, Texas.

## "IV.

"That said representations so made by defendant to the officers of plaintiff corporation to the effect that if they would issue him 50 shares of stock of the corporation as an accommodation to him and without his paying anything therefor, he would use this stock to obtain a loan and that when he finished his work for plaintiff, he would either return the 50 shares of stock to the plaintiff or pay for the same and that the only reason he wanted the stock was to use it as collateral for the purpose of obtaining a loan, were, in fact, misrepresentations and were false and the defendant then and there knew they were false at the time he made them and he made them for the purpose of inducing the officers of the plaintiff to believe them and rely upon them. That the plaintiff's officers did, in fact, believe such misrepresentations and relied upon the same and issued defendant said stock. That the plaintiff, acting through its officers, would

not have issued said shares of stock to defendant had it not been for such misrepresentations made by defendant to plaintiff's officers."

The trial court further found that appellee paid appellant in full and in money for all services performed under the written contracts and for all extra work done by him, and that at the time appellant's services were terminated nothing was then due him and nothing is now due him for extra work; that appellee has demanded the return of said shares of stock and that appellant has and still does refuse to return the same which stock appellee has in his possession.

The trial court also found:

"That at the time defendant made said misrepresentations to plaintiff's officers to induce them to issue the 50 shares of stock to him as an accommodation so that he could borrow money thereon, he did not intend to return said shares of stock nor pay for the same as he agreed to do as a part of the misrepresentations to the plaintiff's officers, but at that time and when said misrepresentations were made by defendant, he intended to claim that said shares of stock were issued to him in payment for extra work which he intended to claim he had done for plaintiff and which he intended to claim he had never been paid for. That pursuant to said fraudulent scheme on the part of defendant, when plaintiff made demand upon defendant to return said shares of stock, defendant claimed and he now claims, that said shares of stock were issued to him by plaintiff in payment for extra work done by him for plaintiff over and above and outside of said two written contracts and for which he had never been paid in money. That said claims of defendant that the shares of stock were issued to him for extra work done by him for plaintiff for which he had never been paid in money are

false and untrue. The Court finds that the defendant was paid in money for all extra work that defendant did for plaintiff on said project, and that the claims of defendant in this regard amount to an over-valuation by him of his services for extra work and are claims for work that he never did."

He further found that the representations were made in Bell County and that the shares of stock were issued and delivered there, and that appellant has never paid any consideration for said shares of stock either in money, services or property.

■ Appellant did not except to the findings of fact and conclusions of law but he did except to the judgment overruling his plea of privilege. Thereby he preserved his right to here contend that the findings do not support the judgment and

"* * * to contend on appeal that the findings have no support in the evidence or are contrary to the great weight and preponderance of the evidence by including proper points or cross-points of error in his brief in the Court of Civil Appeals." Cowling v. Colligan, Tex.Sup., 312 S.W.2d 943, 948.

Appellant here presents eight points. These are to the effect that the trial court erred in holding that: appellant was paid in money for all extra work performed by him; that appellant made fraudulent representations to appellee relative to paying for the shares of stock issued to him; appellant was guilty of a fraudulent scheme to obtain the shares of stock without payment therefor; that the contention of appellant that the stock was issued to him in payment for extra work was false and an over-valuation by him of his services; the issuance of the stock violated section 6 of Art. 12, Texas Constitution; venue of this suit is maintainable in Bell County under exception 7 of Art. 1995, Vernon's Ann.Civ. St. Appellant's other points are that the trial court erred in overruling: his plea of privilege without any finding that he "was guilty of fraud in connection with the over payment as alleged in appellee's alternative pleading," objections to hearsay testimony of the witness Albert E. Casey.

Actionable fraud is defined by Art. 4004, Vernon's Ann.Civ.St. We quote in part from that Article:

"Actionable fraud in this State with regard to transactions * * * in stock in corporations or joint stock companies shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract. Whenever a promise thus made has not been complied with by the party making it within a reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall be on the party making it to show that it was made in good faith but was prevented from complying therewith by the act of God, the public enemy or by some equitable reason."

Exception 7, supra, provides that in all cases of fraud suit may be brought in the county where the fraud was committed or in the county where the defendant has his domicile.

Appellant was called by appellee as an adverse witness and testified that the shares of stock were issued to him for extra work done and that at the time he represented that he had done extra work. He also said he had been paid everything due him under the contracts.

There was testimony that during the progress of the work appellant approached appellee's officers and stated that he was in need of money and asked for an advance payment; that upon being told that appellee did not have the money appellant said that if appellee would let him have $5,000

worth of stock that he thought he could use it for collateral at his bank for a loan to continue his operations, and that upon completion of the work he would either buy the stock or return it; that appellee's officers believed and relied on appellant's representations and issued $5,000 worth of stock to him and that he then took said stock into his possession; that the representations were made in Bell County and that the stock was issued and delivered to appellant there; that appellant was paid, in money, all sums due him for work done; that he did not pay anything for the stock; that there had been a demand for the return of the stock and that appellant had failed to return the same.

■ The trial court's finding, which is supported by the evidence, that appellant did not pay for the stock in money, property or services supports the conclusion that the issuance of the stock was an ultra vires act by appellee's officers and was null and void. Art. 12, Sec. 6, Texas Constitution; Art. 1353, Vernon's Ann.Civ.St.

■ Appellee had and has a vital interest in its own corporate affairs and the right to assert that the issuance of stock to appellant was a void transaction. In point on principle is the case of McAlister v. Eclipse Oil Co., 128 Tex. 449, 98 S.W.2d 171.

■ The trial court found from the evidence before him that appellant made false representations to induce the issuance of stock to him; that at the time he knew such representations were false; that such representations were believed and relied on, and that appellant at the time he made such representations did not intend to return the stock to appellee. These findings when supported by the evidence, as they are, must be sustained as findings on the issue of fraud. In Turner v. Biscoe, 141 Tex. 197, 171 S.W.2d 118, 119, the court said:

"The governing principles of law are familiar. A person's intention is a matter of fact. When a promise is made the promisor expressly or by necessary implication states that he then has a present intention to perform, and if such intention does not actually exist at that time, a false statement of fact has been made upon which fraud may be predicated. The gist of the fraud is deception as to an existing fact, namely, the state of the promisor's mind. That fact may be established by circumstantial evidence taken in connection with the breach, but cannot be established by the breach alone. The fact of breach, standing alone, does not even raise the issue of lack of intention to perform at the time the covenant was entered into."

In the case before us there was shown and found more than a mere breach of a promise.

■ Supra we have noted appellee's alternative pleading and appellant's testimony on the issue thus raised. Such testimony when considered in connection with the other evidence presented a conflict for the trial court. The findings on this issue are quoted supra and show that the conflict was resolved against appellant. This finding together with the other findings are sufficient to sustain venue of this suit in Bell County under appellee's alternative pleadings.

■ The witness Albert E. Casey testified that he was general manager for appellee and gave testimony which he said he obtained from appellee's books and their audit. This testimony related to the number of shares of stock issued to appellant, their numbers and the date of issuance. There is other evidence in the record as to the number of shares of stock and the date of their issuance to appellant. In fact appellant testified that the fifty shares of stock were issued to him and there is no controversy between the parties as to this matter. Under these circumstances the admission of the complained of testimony was in any event harmless.

Appellee plead and proved a case of actionable fraud committed in Bell County sufficient to sustain venue of the suit there.

We are convinced that appellant's points do not present error and the judgment of the trial court is affirmed.

Affirmed.