Dennis L. **TEMPLETON** and Karen
C. Templeton, Appellants,

v.

Thomas Edward **DREISS**, as the Duly Appointed Attorney–in–Fact for his parents, William Franklin Dreiss and wife Ruth Dreiss, Appellees.

No. 04–95–00772–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 21, 1998.

Edward G. Marion, The Law Offices of Edward G. Marion, Jr., Boerne, John Curney, Jr., Johnson, Curney, Price & Garcia, P.C., San Antonio, Wayne Crocker, Law Offices of Wayne Crocker, San Antonio, for Appellants.

Marvin G. Pipkin, P. Jeffery Nanney, Drought & Pipkin, L.L.P., San Antonio, Calhoun Bobbitt, Bobbitt & Halter, San Antonio, for Appellees.

Before LÓPEZ, STONE and ANTONIO G. CANTU,[1] JJ.

## OPINION

ANTONIO G. CANTU, Justice (Assigned).

This is an appeal by Dennis L. Templeton and Karen C. Templeton (Templetons), defendants below, from a judgment rendered by the trial court, without benefit of a jury, in favor of Thomas Edward Dreiss (Dreiss), as the duly appointed attorney-in-fact for his parents, William Franklin Dreiss and wife, Ruth Dreiss.

The suit arose out of a dispute between the Templetons and the Dreisses concerning the ownership of a twenty foot wide road strip located in Kendall County. Also incidental to the lawsuit, but later abandoned at trial, was the boundary between a tract of land owned by the Dreisses and one owned by the Templetons.

The genesis of this road is found in a deed dated July 24, 1918 by which G.F. Bierschwale conveyed to Edward Dreiss, Sr. a twenty foot wide strip of land in Kendall County lying parallel to a partition fence between the Clarence Voigt and G.F. Bierschwale properties, to be used as a road for entrance from the San Antonio—Fredericksburg Highway to an 82.8 acre tract.

Prior to this conveyance, Edward Dreiss, Sr. had purchased the 82.8 acre tract of land from Edward and Kathryn Wentworth by deed dated December 16, 1912. This purchase gave access to the Lower Government Road and frontage on the Guadalupe River. However, at that time there was no access to the San Antonio—Fredericksburg Highway.

In the 1920's Edward Dreiss, Sr. built a road that connected with the San Antonio—Fredericksburg Highway to the north and which went down the twenty foot strip to the river bottom fronting the Guadalupe River at the other end.

Edward Dreiss, Sr. died on June 7, 1931, and following the probate of his will, his sons, Paul Dreiss and Ed Dreiss, Jr., qualified as independent executors. Thereafter, by distribution deed dated April 1, 1933, the executors carved out 14.9 acres from the original 82.8 acre tract and conveyed it to Ed Dreiss, Jr.

In addition, the 1933 deed sought to convey an "undivided interest" in the road.[2] Attached to the 1933 deed and referenced therein was a plat known as the "Linen Survey," which depicted the location of the

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

2. This deed provides in part:
 That we, Paul Dreiss and Ed Dreiss, Jr. Executors of the Estate of Ed Dreiss, deceased ... do grant, sell and convey unto the said Ed Dreiss, Jr .... 14.9 acres of land, being part of an 82.8 acre tract out of original survey No. 15 J.A. de la Garza, sold to Edward Dreiss, Sr. by Edward Wentworth and wife by deed dated December 16, 1912, recorded in Vol. 25, page 489 Kendall County Deed Records, hereby referred to.... The land herein conveyed being more fully shown within red lines upon the plat hereto attached and made a part of this deed. This deed also conveys an undivided interest in the road leading from the San Antonio–Fredericksburg Highway to the old lower Government Road passing through this property. It being agreed that this road is to be always used for road purposes by the different owners of said 82.8 acres....

14.9 acre tract and the road. By distribution deed dated February 8, 1935, Paul Dreiss and Edward Dreiss, Jr., as executors of the estate of Ed Dreiss, Sr. and individually, along with the other heirs of the estate,[3] conveyed all their interest in the remaining acreage to Ernst A. Dreiss.[4]

The 1935 deed specifically excepted the 14.9 acres conveyed to Ed Dreiss, Jr. in the 1933 deed. It further referenced and incorporated by volume and page number the recording information for the 1933 deed, but otherwise was silent as to the road.

Edward Dreiss, Jr. died in 1961 and title passed to his widow and two sons, William Franklin Dreiss and Edward Dreiss III. In 1966, William Franklin Dreiss purchased the 14.9 acres from his mother and brother. Thus William Franklin Dreiss and Ruth Dreiss claim ownership of the 14.9 acre tract and the road through mesne conveyances from Edward Dreiss, Jr.

By deed dated May 1, 1940, Ernst A. Dreiss conveyed the 67.9 acres including "his" interest in the twenty foot road strip to William Wasmann, one of the Templetons' predecessors in title.[5]

Wasmann conveyed to Paul Snyder by deed dated February, 1943. Snyder conveyed to Pete and Henrietta Garcia by deed dated August, 1948 and the Garcias conveyed to Jack Busbee by deed dated March, 1952.

Jack Busbee then conveyed to William Busbee by deed dated June, 1985 and William Busbee conveyed to the Templetons by deed dated January 18, 1994.

Prior to closing, the Templetons were informed by the title company that it would not issue a survey deletion, even for the payment of an additional premium. Further, the Templeton Deed specifically excluded any warranty with respect to the road and fence line overlappments and/or encroachments.

After the Templetons purchased the property, Dennis Templeton confronted William Franklin Dreiss and informed him that he had to move his fence lines, his road, and the gate to his home. He further informed Dreiss that he could no longer have access to the Guadalupe River and could no longer use the lower portion of the road.

The present entrance off the old San Antonio–Fredericksburg Highway also includes two tracts of land that are not in issue, being a 16.6 foot wide tract and a 13.4 foot wide tract belonging to the Templetons. These tracts were purchased by their predecessor in title, Wasmann in 1941.

The twenty-foot wide strip of land in issue that was purchased by Edward Dreiss, Sr. from George F. Bierschwale in 1918 is on the south side of and parallel to the two tracts purchased by Wasmann.[6] The Dreisses and

---

3. The heirs of Ed Dreiss, Sr. consisted of his five children, Paul Dreiss, Ed Dreiss, Jr., Ernst A. Dreiss, Josephine Peeler, Franz Dreiss and Juanita Kastner, his granddaughter and only child of his deceased daughter, Else Kastner.

4. The conveying language recites in part:
 That we, Paul Dreiss and Edward Dreiss, Jr., independent executors of the last will and testament of Ed Dreiss, deceased ... do grant, sell and convey unto the said Ernst A. Dreiss ... 67.90 acres of land out of that certain tract of 82.8 acres ... [e]xcepting from said 82.8 acres those certain 14.9 acres conveyed to Ed Dreiss, Jr., by Paul Dreiss and Edward Dreiss, Jr., independent executors of the estate of Ed Dreiss, deceased by deed dated April 1, 1933....

5. The deed in part reads:
 [S]aid 67.90 acres above described and herein conveyed being the same property described in deed dated February 9, 1935, from Paul Dreiss et al to Ernst A. Dreiss, recorded in Vol. 54, page 430 of the deed records of Kendall County, Texas, which deeds are hereby re-

ferred and made a part hereof for a full description of said 67.90 acres herein conveyed. And for the same consideration, we grantors herein, the said Ernst A. Dreiss and Ava Dreiss do hereby grant, sell and convey unto the said Wm. Wasmann, for road purposes, that certain 20 foot strip of land described in that certain instrument from Geo. F. Bierschwale to Ed Dreiss recorded in Vol. 2, page 181 of the Miscellaneous Records for Kendall County, Texas, which instrument is hereby referred to and made a part hereof for further description.

6. On January 18, 1994 William Busbee and wife, Karen Busbee conveyed to the Templetons property which purportedly included the 67.9 acres originally conveyed to Ernst A. Dreiss, the twenty-foot strip and the two strips of land purchased by Wasmann in 1941. The description was as follows:

 PROPERTY (including any improvements):
 BEING all of a certain tract or parcel of land out of Jose Antonio de la Garza Survey No. 15, Abstract No. 177, in Kendall County,

their family have continuously used the 14.9 acre tract and the road since 1918.

William Franklin Dreiss, fearing that Templeton's threats would jeopardize his family's fundamental use and enjoyment of their property, filed his Original Petition and Application for Temporary Restraining Order on February 11, 1994. The Templetons counterclaimed seeking a declaratory judgment as to the rights of the parties in the road purchased by Ed Dreiss, Sr. in 1918 and as to boundary lines between the parties. Dreiss amended his petition to also seek declaratory judgment relief covering the same issues raised by the Templetons.

Following a four day non-jury trial, the trial court ordered the preparation of a metes and bounds description of the roadway to be attached to the final judgment as an appendix. Upon timely request, the trial court filed its Findings of Fact and Conclusions of Law.

The Templetons have challenged the Findings of Fact and Conclusions of Law in fourteen points of error and some sixty plus subpoints. Because not all of the subpoints are addressed in the Templetons' brief, we shall confine our discussion only to those which are presented by argument and supported by authorities. All others shall be considered waived. *See Wise v. De Toca,* 761 S.W.2d 467, 469 (Tex.App.—Houston [14th Dist.] 1988, no writ).

The trial court filed the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The real property which is the subject of this lawsuit is located in Kendall County, Texas.

---

Texas; part of the land described as 72.18 acres in a Gift Deed to William Scott Busbee from Jack V. Busbee, et ux, executed the 6th day of June, 1985 and recorded in Volume 245 at Page 448 of the Deed Records of Kendall County, Texas; and being more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof.
RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY:
 1. Rights of others in and to that certain road passing through this property as set forth

2. The boundaries of that certain 14.9 acre tract (the "14.9 acre Tract") are established by that certain Deed dated April 1, 1933, from Paul Dreiss and Ed Dreiss, Jr., Executors of the Estate of Ed Dreiss, Deceased, to Ed Dreiss, Jr., recorded in Volume 53, Page 140 of the Deed Records of Kendall County, Texas (the "1933 Deed").

3. The southwesterly boundary of the 14.9 acre Tract is further confirmed by that one certain survey prepared on September 13, 1994, by Byron L. Simpson, Registered Professional Land Surveyor No. 151 (the "Simpson Survey"), which was admitted into evidence as Plaintiff's Exhibit No. 31 and attached to the Judgment as Exhibit "A."

4. The southwesterly boundary of the 14.9 acre Tract has been agreed to and acquiesced in between the owners of the respective tracts until disputed by Dennis Templeton and/or Karen Templeton ("Defendants").

5. That certain road (the "Road") in Kendall County, Texas, which was conveyed in the 1933 Deed and a metes and bounds description of which was attached to the Judgment as Exhibit "B," may, for ease of reference, be divided into three (3) sections as follows:

 (a) That portion of the road described by metes and bounds in Deed dated July 24, 1918 (the "1918 Deed"), from G.F. Bierschwale to Ed Dreiss, Sr., recorded in Volume 2, Page 181 of the Miscellaneous Deed Records of Kendall County, Texas ("Section A").

 (b) That 20' road beginning at the southwest end of Section A, being parallel to the southwest boundary line of the 14.9 acre Tract, as set forth in the Simpson

---

in Deed dated April 1, 1933, executed by Paul Dreiss and Ed Dreiss, Jr., Executors of the Estate of Ed Dreiss, Deceased to Ed Dreiss, Jr. as recorded in Volume 53, Page 140, Deed Records of Kendall County, Texas.
 2. Fence line overlappments and/or encroachments as set forth on plat of subject property as prepared by Don W. Voelkel, Registered Professional Engineer dated January 5, 1994.

Survey, and ending at the point at which the road turns in a southwesterly direction from the 14.9 acre Tract ("Section B").

(c) The continuation of the 20' road, beginning at the south end of Section B, turning southwest to the original Dreiss bridge location, which is still visible and apparent, and then continuing to the gate at the Old Lower Government Road at the corner of the Clarence Voigt fence line, being a visible and apparent roadway with a known and visible beginning point, mid-point, ending point, and width ("Section C").

6. That road described by metes and bounds and survey attached to the Judgment as Exhibit "B" is the same road described in the trial evidence.

7. It was the intention of the parties to the 1933 Deed that fee simple title in and to the Road would be vested, by virtue of such Deed, in Edward Dreiss, Jr.

8. It was the intention of the parties to the 1933 Deed that an easement for use of the Road would be reserved to and vested in Paul Dreiss and Edward Dreiss, Jr., as Executors of the Estate of Edward Dreiss, Sr., Deceased, and the successors-in-interest of said Estate.

9. William Franklin Dreiss and Ruth Dreiss and their predecessors in title have continuously used the Road.

10. Without the fee simple conveyance of the Road, the 14.9 acre Tract would not have had a fee simple access to public roadways.

11. The land remaining in the Estate of Ed Dreiss, Sr. after the 1933 Deed· had direct access to a public road other than by and through the Road.

12. The 1933 Deed furnishes within itself, or by reference to some other writing, including the Linen survey and the 1918 Deed, the means or data by which the Road may be identified with reasonable certainty.

13. The Road can be located with reasonable certainty by reference to the 1938 certified aerial photo which was admitted into evidence as Plaintiff's Exhibit No. 33

and which fairly and accurately depicts the location of the Road.

14. The Road has been visible, apparent and in continuous use since prior to 1933.

15. The purported conveyance of the Road by Deed dated May 1, 1940, from Ernst A. Dreiss and Ava Dreiss to Wm. Wasmann and recorded in Volume 59, Page 115 of the Deed Records of Kendall County, Texas (the "1940 Deed"), as well as purported conveyances in subsequent deeds in the Wasmann/Templeton chain of title, was a mistake because fee simple title in and to the Road had been previously conveyed and was never conveyed from the Estate to Ernst A. Dreiss and Ava Dreiss.

16. Neither Defendants nor their predecessors in title exercised exclusive dominion, control or use over any portion of the 14.9 acre tract.

17. Neither Defendants nor their predecessors in title exercised exclusive dominion, control or use over any portion of the Road.

18. Neither Defendants nor their predecessors in title ever excluded William Franklin Dreiss and Ruth Dreiss, their family, invitees or predecessors in title, from any portion of the 14.9 acre tract.

19. Neither Defendants nor their predecessors in title ever excluded William Franklin Dreiss and Ruth Dreiss, their family, invitees or predecessors in title, from any portion of the road.

20. Neither Defendants nor their predecessors in title ever cultivated any portion of the 14.9 acre tract.

21. Neither Defendants nor their predecessors in title ever cultivated any portion of the road.

22. Neither Defendants nor their predecessors in title exercised continuous possession of any portion of the 14.9 acre tract.

23. Neither Defendants nor their predecessors in title exercised continuous possession of any portion of the road.

24. Neither Defendants nor their predecessors in title made an actual and visible appropriation of any portion of the 14.9 acre tract.

25. Neither Defendants nor their predecessors in title made an actual and visible appropriation of any portion of the road.

26. Neither Defendants nor their predecessors in title commenced or continued possession of any portion of the 14.9 acre tract under a claim of right that was inconsistent with and hostile to the claim of William Franklin Dreiss or Ruth Dreiss or their predecessors in title.

27. Neither Defendants nor their predecessors in title commenced or continued possession of any portion of the road under a claim of right that was inconsistent with and hostile to the claim of William Franklin Dreiss or Ruth Dreiss or their predecessors in title.

28. William Franklin Dreiss and Ruth Dreiss and their predecessors in title have used, cultivated and maintained the 14.9 acre tract and have used and maintained the road.

29. Defendants had actual notice of William Franklin Dreiss and Ruth Dreiss's ownership of the 14.9 acre tract and the road prior to Defendants' purchase of approximately 65.26 acres in Kendall County, Texas by Deed dated January 18, 1994, filed January 18, 1994, recorded in Volume 411, Page 780, Deed Records, Kendall County, Texas, from William S. Busbee and wife, Karen K. Busbee to Dennis L. Templeton and wife, Karen C. Templeton (the "1994 Deed").

30. Defendants have threatened to restrict William Franklin Dreiss and Ruth Dreiss's use of the road and to destroy and relocate the existing fence between the parties' properties, and unless Defendants are enjoined from such interference, William Franklin Dreiss and Ruth Dreiss would suffer irreparable injury for which they would have no adequate remedy at law.

31. Defendants will have reasonable access to and use of the road if the two existing locked gates at the locations of the Bluff Gate, being that gate identified as "Locked Gate" on the Simpson Survey, and the Lower Government Road Gate, being that gate located at the intersection of the road and the Lower Government Road on the north boundary of the Guadalupe River, which Defendants have the means to open, and no other locked gates, are maintained.

32. Reasonable and necessary attorney's fees for legal services rendered through the trial of this cause by Plaintiff's attorneys amount to $50,000.00.

33. Reasonable and necessary attorney's fees for legal services rendered by Plaintiff's attorneys in the event of an unsuccessful appeal to the Court of Appeals amount to $10,000.00.

34. Reasonable and necessary attorney's fees for legal services rendered by Plaintiffs' attorneys in the event that an application for writ of error in the Supreme Court is filed but denied amount to $10,000.00.

35. Reasonable and necessary attorney's fees for legal services rendered by Plaintiff's attorneys in the event that an application for writ of error is granted by the Supreme Court but such appeal is unsuccessful amount to $5,000.00.

36. Any conclusion of law contained herein which may be deemed in whole or in part a finding of fact is hereby found as a fact.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the instant cause, and a justiciable controversy exists between the parties hereto.

2. Venue of the instant cause is mandatory in Kendall County, Texas.

3. The 1933 Deed is not ambiguous.

4. The 1933 Deed contains a nucleus of description of the Road sufficient to make admissible parol and/or extrinsic evidence to identify the Road.

5. William Franklin Dreiss and Ruth Dreiss are the owners of fee simple absolute title in and to the 14.9 acre Tract, being the same property conveyed by the 1933 Deed and the true and correct southwesterly boundary of which is reflected and confirmed by the Simpson Survey, being the same 14.9 acre Tract referred to in Findings of Fact numbers 2 and 3 hereinabove.

6. The fence line along the southwesterly boundary of the 14.9 acre Tract does not encroach on Defendant's property.

7. The 1933 Deed vested fee simple title to the Road in the grantee thereof and reserved an easement for use of the Road for ingress and egress in the grantors therein.

8. The purported conveyances of the Road in the 1940 Deed and in subsequent deeds to the 67.9 acre tract conveyed thereby are void to the extent of such purported conveyance of the Road.

9. William Franklin Dreiss and Ruth Dreiss are the owners of fee simple absolute title in and to the Road.

10. The 1994 Deed conveyed only the grantors' interest in the portion of that 82.8 acre tract (the "82.8 acre Tract") conveyed by Deed dated December 16, 1912 from Edward Wentworth and Kathryn S. Wentworth to Ed. Dreiss, Sr. recorded in Volume 25, Page 489 of the Deed Records of Kendall County, Texas, which remained in said Estate following the conveyance made by the 1933 Deed.

11. All current and future owners of the 82.8 acre Tract, or any part thereof, are the owners of an easement in and to the Road, which easement runs to the benefit of all such owners.

12. From 1933 until the present, neither William Franklin Dreiss and Ruth Dreiss nor their predecessors in title have ever abandoned the use of any portion of the Road.

13. From 1933 until the present, neither William Franklin Dreiss or Ruth Dreiss nor their predecessors in title have waived any of their rights in and to any portion of the 14.9 acre Tract or the Road.

14. From 1933 until the present, neither William Franklin Dreiss or Ruth Dreiss nor their predecessors in title have delayed in the exercise of their rights in and to any portion of the 14.9 acre Tract or the Road such as would amount to laches.

15. Neither William Franklin Dreiss nor Ruth Dreiss are estopped to make any of the claims made in the instant lawsuit.

16. From 1933 until the present, neither William Franklin Dreiss or Ruth Dreiss nor their predecessors in title have committed any mistake of fact with respect to their rights in and to any portion of the 14.9 acre Tract or the Road.

17. Neither William Franklin Dreiss nor Ruth Dreiss have failed to mitigate their damages with respect to the claims of Defendants herein.

18. The Road is to provide free and uninterrupted access for Plaintiff and Defendants; provided, however, that Defendants and their successors in title should be permanently enjoined from interfering with the free and uninterrupted use of the Road by William Franklin Dreiss and Ruth Dreiss and their successors in title, except that the Bluff Gate and the Lower Government Road Gate may be locked with interlocking chains/locks in such a manner that William Franklin Dreiss and Ruth Dreiss and Defendants may open said gates by unlocking their own chain/lock.

19. Neither Defendants nor their predecessors in title acquired title by adverse possession to any portion of the 14.9 acre tract.

20. Neither Defendants nor their predecessors in title acquired title by adverse possession or by prescription to any portion of the Road.

21. The Deed dated February 9, 1935, filed March 20, 1935, recorded in Volume 54, Page 430 of the Deed Records of Kendall County, Texas, from Paul Dreiss and Edward Dreiss, Independent Executors of the Estate of Ed Dreiss, Sr., Deceased, to Ernst A. Dreiss, did not effect a conveyance of fee simple title to any portion of the Road.

22. Defendants are not co-tenants with William Franklin Dreiss or Ruth Dreiss in or to any portion of the Road.

23. Neither William Franklin Dreiss nor Ruth Dreiss committed trespass on any portion of any property owned by Defendants.

24. It is equitable and just for Plaintiff to receive his costs and reasonable and necessary attorney's fees, pursuant to Texas Civil Practice & Remedies Code § 37.009.

25. Plaintiff is entitled to recover from Defendant his reasonable and necessary attorney's fees for legal services rendered through the trial of this cause by plaintiff's attorneys in the amount of $50,000.00.

26. Plaintiff is entitled to recover from Defendant his reasonable and necessary attorney's fees for legal services rendered by plaintiff's attorneys in the event of an unsuccessful appeal to the Court of Appeals in the amount of $10,000.00.

27. Plaintiff is entitled to recover from Defendant his reasonable and necessary attorney's fees for legal services rendered by plaintiff's attorneys in the event that an application for writ of error in the Supreme Court is filed but denied in the amount of $10,000.00.

28. Plaintiff is entitled to recover from Defendant his reasonable and necessary attorney's fees for legal services rendered by plaintiff's attorneys in the event that an application for writ of error is granted by the Supreme Court but such appeal is unsuccessful in the amount of $5,000.00.

29. Defendants are not entitled to recover any portion of their attorney's fees incurred with respect to their defenses or counterclaims herein.

30. Defendants are not entitled to recover actual or punitive damages with respect to their counterclaims herein.

31. Plaintiff is entitled to recover from Defendant all costs of Court expended and incurred in this cause.

32. Any finding of fact herein which may be deemed in whole or in part a conclusion of law is hereby made a conclusion of law.

### POINT OF ERROR NUMBER ONE[7]

■ The Templetons' first challenge addresses the trial court's construction of the 1933 deed from the Estate of Ed Dreiss, Sr. to Ed Dreiss, Jr. It is claimed that the evidence is legally and factually insufficient to support the trial court's Findings and Conclusions germane to the conveyance.[8]

### POINT OF ERROR NUMBER TWO[9]

The Templetons' second challenge addresses alleged trial court error in finding that the road was sufficiently described in the 1933 deed to locate it on the ground. It is argued that the plat ("Linen Survey") referred to in the deed was not attached to the recorded deed nor recorded in the Kendall County Deed Records. Moreover, it is insisted that the plat does not within itself provide enough descriptive information to locate the road.

### POINT OF ERROR NUMBER THREE[10]

The Templetons further claim that the trial court erred in finding that the road mentioned in the 1933 deed was conveyed in fee simple.

Because the first three points of error address the court's construction of the 1933 deed, they will be discussed together.

Specifically, the Templetons contend that the conveyance from the Executors of the Estate of Ed Dreiss, Sr., to Ed Dreiss, Jr., in the deed dated April 1, 1933 that purports to convey "an undivided interest" in the road is void, uncertain and of no effect because it fails to specifically describe the interest conveyed and the property to be transferred.

■ It is claimed that the road is not described by metes and bounds in the 1933 deed or in the plat and that the deed and plat do not provide a definite beginning point, a definite ending point,[11] the width of the road,

7. Point of error number one contains twenty-two subpoints of error, all single spaced. We will confine our discussion to the presentation made in the body of the brief in each instance.

8. In each point of error, the Templetons have challenged the legal and factual sufficiency of the evidence to support the trial court's findings of fact and conclusions of law. A trial court's conclusions of law may not be challenged for factual insufficiency, but the conclusions of law drawn from the facts may be reviewed to determine their correctness. We will address each conten-

tion with this in mind. *See Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

9. Point of error number two contains five subpoints of error.

10. Point of error number three contains three subpoints of error.

11. It is not necessary that a roadway be described by metes and bounds, if it is described in some other definite way. *Steahr v. Clark,* 535

a course, a distance, ownership or an indication as to what undivided interest less than the whole is sought to be conveyed.

▇▇▇ At the trial, the Templetons insisted that the 1933 deed was ambiguous while Dreiss urged nonambiguity. On appeal, the Templetons now take the position that there was no ambiguity in the deed. We do not find it necessary to resolve the correctness of the position taken by the parties insofar as it affects the reception of evidence on the matter, inasmuch as evidence was, nevertheless, correctly received.[12] Furthermore, the trial court found that the deed was not ambiguous and the Templetons do not challenge this finding, but to the contrary agree with it.[13] Thus, it would seem that even though the Templetons have urged insufficiency of evidence as a challenge, that the true complaint can only be as to the correctness of the deed's construction, a purely legal issue.[14]

▇▇▇ The court's primary duty when construing an unambiguous deed is to ascertain the intent of the parties from the "four corners" of the deed. *Luckel v. White,* 819 S.W.2d 459, 461 (Tex.1991). Under the "four corners rule" the intention of the parties, especially that of the grantor, will be gathered from the instrument as a whole and not from isolated parts thereof. *Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 789 (Tex.1995); *Texas Pac. Coal & Oil Co. v.*

*Masterson,* 160 Tex. 548, 334 S.W.2d 436, 439 (1960); *Davis v. Andrews,* 361 S.W.2d 419, 423 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.). That intention, when ascertained, prevails over arbitrary rules. *Garrett v. Dils Co.,* 157 Tex. 92, 299 S.W.2d 904, 906 (1957)(quoting *Harris v. Windsor,* 156 Tex. 324, 294 S.W.2d 798, 800 (1956)).

▇▇▇ Every presumption should be indulged to reach the conclusion that some interest should be passed by a deed. *Coker v. Roberts,* 71 Tex. 597, 9 S.W. 665, 667 (1888). In fact, a deed will be construed to confer upon the grantee the greatest estate that the terms of the instrument will permit. *Ladd v. DuBose,* 344 S.W.2d 476, 480 (Tex. Civ.App.—Amarillo 1961, no writ).

▇▇▇ An unambiguous deed will be enforced as written, even though it does not express the original intention of the parties. *Davis,* 361 S.W.2d at 423. This is so because the intention expressed controls over the expression that was intended.[15] *Id.*

▇▇▇ The general rule governing unambiguous instruments disallows the introduction of parol testimony unless it is clearly alleged and proved that the execution of the instrument was procured by fraud, accident or mistake. *See Murphy v. Dilworth,* 137 Tex. 32, 151 S.W.2d 1004, 1005 (1941). But even if the instrument is not uncertain, if the meaning of language used therein becomes

---

S.W.2d 39, 41 (Tex.Civ.App.—Austin 1976, no writ).

**12.** Even in the case of an unambiguous written instrument, a trial court may properly admit extrinsic evidence, such as parol testimony of the facts and circumstances surrounding or pertaining to the making of the agreement, in order that the court may apply the language used in the instrument to the facts and circumstances then existing for the purpose of ascertaining the true intention of the parties. *Benson v. Jones,* 578 S.W.2d 480, 484 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

**13.** Whether an instrument is ambiguous is a question of law. *Davis v. Andrews,* 361 S.W.2d 419, 424 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.); *see Coffee v. William Marsh Rice Univ.,* 408 S.W.2d 269, 273 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.).

**14.** Where neither party asserts that a deed is ambiguous its construction is purely a question of law and not of fact. The inquiry becomes a

mixed question of law and fact only where the words contained in the instrument are ambiguous. *First Natl Bank in Dallas v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). Therefore, the construction of an unambiguous instrument by the trial court is not binding on the reviewing court and the trial court's conclusions of law are reviewable when attacked as erroneous as a matter of law but not when attacked on grounds of sufficiency of the evidence to support them, as if they were findings of fact which may be reviewed for legal and factual sufficiency of the evidence to support them. *First Nat'l Bank in Dallas,* 589 S.W.2d at 146; *see Maxfield v. Northwood Homes, Inc.,* 582 S.W.2d 588, 589 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

**15.** The question is not what the parties mean to say but the meaning of what they did say. *Davis,* 361 S.W.2d at 423.

uncertain when an attempt is made to apply it to the subject matter of the instrument, parol evidence is permissible to aid in making the application. *Id.*

 This does not mean, however, that the parties may prove the making of an agreement different from that expressed in the instrument, nor that the unambiguous language used in the instrument may be violated or the legal effect thereof changed. It merely permits proof of the then existing circumstances, in order to enable the court to apply the language used therein to the facts as they then existed. *Id.* And although extrinsic evidence may not be resorted to for supplying the location or description of property, nevertheless, it may be resorted to in identifying the land with reasonable certainty from the information in the writing. *Wyatt v. McGregor,* 855 S.W.2d 5, 9 (Tex.App.— Corpus Christi 1993, writ denied); *Teledyne Isotopes, Inc. v. Bravenec,* 640 S.W.2d 387, 390 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

 The law is well settled in this state that a description of land in a deed, in order to be sufficient, must meet the test set out in *Smith v. Sorelle,* 126 Tex. 353, 87 S.W.2d 703, 705 (1935). "The true rule, as deduced from the authorities seems to be that this description should be so definite and certain upon the face of the instrument itself, *or by other writing referred to,* that the land can be identified with reasonable certainty." *Id.* (emphasis added); *see Broaddus v. Grout,* 152 Tex. 398, 258 S.W.2d 308, 310 (1953); *Matney v. Odom,* 147 Tex. 26, 210 S.W.2d 980, 982 (1948).

 A deed purporting to convey land, which describes it only by quantity and as being part of a larger tract, with nothing whereby to identify what specific portion of the larger tract is intended to be conveyed, is void for uncertainty of description. *Matney,* 210 S.W.2d at 983. The same may be said of an instrument that does not furnish within itself, or by reference to some other existing writing, the means or data by which the land can be identified. *River Road Neighborhood Ass'n v. South Texas Sports,* 720 S.W.2d 551,

558 (Tex.App.—San Antonio 1986, writ dism'd).

 However, where the description specifies a property intended to be conveyed, and the instrument furnishes other sufficient means of determining the particular property covered thereby, the description is legally sufficient. That is to say, if there appears in the instrument enough to enable one by pursuing an inquiry based upon the information contained in the deed to identify the particular property to the exclusion of others, the description will be held sufficient. *Maupin v. Chaney,* 139 Tex. 426, 163 S.W.2d 380, 383 (1942).

One such instance occurs where the instrument standing alone fails to contain a sufficient property description but nevertheless, refers to another instrument which contains a proper description of the property. In such cases it is entirely proper to look to such other instrument in aid of the description. *See Pierson v. Sanger,* 93 Tex. 160, 53 S.W. 1012, 1013–14 (1899); *see also River Road Neighborhood Ass'n,* 720 S.W.2d at 558 (map attached to instrument may be looked to in aid of defective written description)

The Templetons insist that the use of the expression "an undivided interest" in the 1933 deed necessarily results in an undeterminable and void conveyance. Reliance is placed on *W.T. Carter & Bro. v. Ewers,* 133 Tex. 616, 131 S.W.2d 86, 87 (Tex. Comm'n App.1939, judgm't adopted) which held a conveyance to be void for uncertainty because the description did not contain words of ownership or a means of determining the extent of the interest to be conveyed. *See Skinner v. Noland,* 154 Tex. 615, 281 S.W.2d 332, 333 (1955); *Dahlberg v. Holden,* 150 Tex. 179, 238 S.W.2d 699, 701–02 (1951); *Ellett v. Liedtke,* 668 S.W.2d 880, 881 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Kennedy v. Shipp,* 135 S.W.2d 204, 208 (Tex. Civ.App.—El Paso 1939, writ dism'd). However, in each of these cases, the court was careful to recognize the rule that allows an uncertain description to be made certain by the aid of extrinsic evidence when there is language in the deed which furnishes a key or a nucleus of description that allows the extrinsic evidence to make certain the identi-

ty of the realty sought to be conveyed. *See Kmiec v. Reagan,* 556 S.W.2d 567, 569 (Tex. 1977); *Gates v. Asher,* 154 Tex. 538, 280 S.W.2d 247, 248 (1955); *Matney,* 210 S.W.2d at 983; *Maupin,* 163 S.W.2d at 383; *Pierson,* 53 S.W. at 1014; *Curdy v. Stafford,* 88 Tex. 120, 30 S.W. 551, 552 (1895); *Continental Supply Co. v. Missouri, K & T R.R. Co.,* 268 S.W. 444, 446 (Tex. Comm'n App.1925, judgm't adopted); *Pan Am. Petroleum Corp. v. Tex. Pac. Coal & Oil Co.,* 340 S.W.2d 548, 553 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.).

■ It is further recognized that the description in a deed is not required to be mathematically certain, but only reasonably certain so as to enable a party familiar with the locality to identify the premises to be conveyed to the exclusion of others. *Gates,* 280 S.W.2d at 248–49; *Temple Lumber Co. v. Mackechney,* 228 S.W. 177, 179 (Tex. Comm. App.1921, judgm't adopted), affirming 197 S.W. 744; *Browning v. West,* 557 S.W.2d 848, 850 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *see Perkins v. Smith,* 476 S.W.2d 902, 907 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.) (words of description are generally given liberal construction in order that conveyance may be upheld).

■ The evidence before us makes clear that it was undisputed that at the time of the execution of the 1933 deed, the estate owned 100% interest in and to all of the road. Thus when the personal representative of the estate executed the 1933 deed there did not exist any uncertainty as to the extent of the grantor's interest in and to the road. Nor was there a dispute as to which "property" was described in the 1933 deed since it is clear that there was only one road passing through the property.[16]

The first "key" contained in the 1933 deed which makes certain the interest conveyed therein is the language of the deed itself when read from its "four corners." *See Luckel,* 819 S.W.2d at 461. The 1933 deed used fee conveyance language with respect to both, the 14.9 acre tract and the road. In a separate and subsequent sentence the grantor reserved the owners of the 82.8 acre tract a right to use the road which constituted an encumbrance against the fee ownership conveyed by the preceding sentence. The Estate, as the grantor in the 1933 deed, chose to make a conveyance of the road only to the grantee of the 14.9 acre tract. The remainder of the 82.8 acre tract already had public road access and the conveyance of the road insured that the 14.9 acre tract also had access to a public road. This is made evident by a second "key" identified as "the Linen Survey."

This Linen Survey was referred to in the 1933 deed, which testimony disclosed was attached to the deed and incorporated therein by reference and which located the road on the ground.

The Linen Survey depicted the road as containing 2.03 acres which confirms the width of the road. Byron Leonard Simpson, a registered professional engineer, licensed professional land surveyor, and licensed state land surveyor, testified that the description in the 1933 conveyance was sufficiently definite to allow the road to be located. *Cf. Asher,* 280 S.W.2d at 249–50. He admitted that the Linen Survey did not describe the road by metes and bounds but insisted that the road could be located from the plat because it described the road as acreage and from that and the length of the road, it could be determined that the road was twenty feet wide.

Additionally, Donald Wayne Voelkel, a professional engineer and registered professional land surveyor, testifying as an expert witness on behalf of the Templetons, agreed that the 1918 deed defined the twenty-foot strip as being twenty feet to the east of the original dividing line between the Voigt and Bierschwale properties.

■ At trial, the Templetons argued that the Linen Survey should not be considered by the trial court because it had not been recorded with the Kendall County clerk or

---

16. See footnote 1, supra, wherein the pertinent portion of the 1933 deed contains the language: This deed also conveys an undivided interest in the road leading from the San Antonio–Freder- icksburg Highway to the old lower Government Road passing through this property.

retained by the clerk's office. There is in fact no evidence that the Linen Survey was not recorded with the 1933 deed.[17]

To the contrary, there is evidence from the Kendall County clerk, Darlene Herrin, that the clerk's practice in 1933 was to record the surveys and then return them to the grantee along with the original deed. A copy was not retained, according to Herrin, because there was no ability to photocopy instruments in 1933.

It has been stated that where a conveyance is made with reference to a map [plat], it is immaterial who made the same and that by referring to it in the deed, the grantor thereby adopts it. Moreover, it is not necessary that the map [plat] be recorded, nor that a copy be produced, if it can be proven in any manner recognized by law where the particular tract and streets [roads] contiguous thereto are located according to such map [plat]. *Spencer v. Levy*, 173 S.W. 550, 557 (Tex.Civ.App.—Austin 1914, writ ref'd); *see City of Corsicana v. Zorn*, 97 Tex. 317, 78 S.W. 924, 925 (1904) (conveyances made pursuant to references in recorded map in the deed records for more particular description held valid); *Nye v. Moody*, 70 Tex. 434, 8 S.W. 606, 607 (1888) (field notes added after recording does not lessen deed's effect as recorded instrument); *Temple Lumber Co.*, 228 S.W. at 179 (field notes of grant referred to in deed would be read into deed); *National Bank of Commerce of Houston v. Dunn*, 381 S.W.2d 654, 662 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.)(reference to unrecorded net profit agreement); *Meek v. Bower*, 333 S.W.2d 175, 179 (Tex.Civ.App.—Houston 1960, no writ) (reference to subdivision map); *Harris v. Windsor*, 279 S.W.2d 648, 649 (Tex. Civ.App.—Texarkana 1955), *aff'd*, 156 Tex. 324, 294 S.W.2d 798 (1956) (all instruments in chain of title when referred to in deed will be read into it); *City of Corpus Christi v. McCarver*, 275 S.W.2d 194, 196 (Tex.Civ. App.—San Antonio), *rev'd on other grounds*, 155 Tex. 153, 284 S.W.2d 142 (1955) (plat referred to in deed which contains more definite description than that contained in deed

may be considered and given effect as part of deed).

■ Therefore, where a map, plat, plan or survey of the premises conveyed is adequately referred to deed, it is usually to be considered as a part of the latter instrument and construed in connection therewith and the courses, distances, or other particulars which appear on such map, plat, plan or survey, are as a general rule to be considered as the true, or part of the true, description of the land conveyed. *Fuentes v. Hirsch*, 472 S.W.2d 288, 293 (Tex.Civ.App.—El Paso 1971, writ ref'd n.r.e.); *see Pritchard v. Burnside*, 140 Tex. 212, 167 S.W.2d 159, 162 (1943).

In *Loomis v. Cobb*, 159 S.W. 305, 307 (Tex.Civ.App.—El Paso 1913, writ ref'd) it was stated:

> It is a familiar and thoroughly well-settled principle of realty law that a purchaser has constructive notice of every matter connected with or affecting his estate which appears by recital, reference, or otherwise upon the face of any deed which forms an essential link in the chain of instruments through which he deraigns his title. The rationale of the rule is that any description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained.

■ We do not agree with the Templetons that the use of the expression "an undivided interest"in the 1933 deed rendered the conveyance void for uncertainty, especially when we note the use of fee simple conveyance language and the undisputed proof that the estate owned all the interest in and to the road when the 1933 deed was executed. Nor do we agree that the road was inadequately described because it was not described by metes and bounds. It is sufficient that the deed provided within itself another sufficient

---

17. It is not necessary that a map, plat or plan referred to be recorded. If it can be proven where the particular lots and the streets contiguous thereto are located according to such map. *Spencer v. Levy*, 173 S.W. 550, 557 (Tex.Civ. App.—Austin 1914, writ ref'd).

means of determining the particular property covered by the conveyance. We overrule the Templetons' points of error one, two and three.

## POINT OF ERROR NUMBER FOUR[18]

The Templetons argue that the 1935 deed from the estate of Ed Dreiss, Sr. conveyed to Ernst Dreiss fee simple title to that portion of the road crossing the 67.9 acres.[19]

The Templetons argue that the following language in the 1935 deed makes it clear that the grantors intended to convey to Ernst Dreiss the entire 67.9 acres of the 82.8 acre tract excepting out only the 14.9 acres described in the 1933 deed.

> Excepting from said 82.8 acres those certain 14.9 acres conveyed to Ed Dreiss, Jr. by Paul Dreiss and Edward Dreiss, Jr., independent executors of the estate of Ed Dreiss, deceased, by deed dated April 1, 1933, recorded in Volume 53, Pages 140–141, Deed Records of Kendall County, Texas. Said 82.8 acres being the same land conveyed to Edward Dreiss by deed from Edward Wentworth and wife, Katherine S. Wentworth, dated December 16, 1912, recorded in Volume 25, Page 489 Deed Records of Kendall County, Texas, hereby referred to. To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Ernst A. Dreiss, his heirs and assigns forever.
>
> * * * * * *
>
> The grantee Ernst A. Dreiss, is one of the six persons named as beneficiary in paragraph Third of the last will and testament of Ed Dreiss, deceased, duly probated in Bexar County, Texas. The undersigned, Paul Dreiss, Edward Dreiss, Jr., Josephine Peeler, Franz Dreiss and Juanita Kastner, being the remaining beneficiaries under paragraph Third of said will of Ed Dreiss, deceased, do hereby in all things confirm the conveyance of the property hereinbefore described to the said Ernst A. Dreiss, and do hereby convey all their right, title

and interest in all the property hereinabove conveyed unto the said Ernst A. Dreiss, his heirs and assigns forever. Grantee as a consideration of this conveyance assumes all current taxes upon the land and premises herein conveyed. Said Josephine Peeler being joined herein by her husband Grady Peeler.

It is contended that the grantor's failure in the 1935 deed to reserve any road or easement across the 67.9 acres results in the conveyance passing to the grantee all of the grantor's interest in the property. This contention is, however, premised on the erroneous position we have already discounted that the 1933 deed failed to convey to Ed Dreiss, Jr. the fee interest in the road in issue. It is further contended, that in any event, Ed Dreiss, Jr. in his individual capacity conveyed his interest in the road passing through the 67.9 acres under the terms of the 1935 deed. Finally, it is contended that since the conveyance of the road in the 1933 deed is void for lack of specificity, there was nothing to except in the 1935 deed. The net result, according to the Templetons, is that Ed Dreiss, Jr., by failing to specifically reserve a road in the 1935 deed, by implication created an implied reservation by necessity to pass from his property entrance to the twenty foot strip. We overrule these contentions.

 We have already disagreed with the Templetons' contention that the 1933 deed did not convey the road to Ed Dreiss, Jr. in fee simple. We need not belabor this point any longer. Since the road had been conveyed in the 1933 deed to Ed Dreiss, Jr. by the estate, the 1935 deed could not convey to Ernst Dreiss what the estate no longer owned.

Moreover, since the 1933 deed reserved an easement in and to the road to the owners of the 82.8 acre tract and the 1935 deed being made subject to the 1933 deed, it was unnecessary for the 1935 deed to once again reserve to the estate any interest in the road. The only interest in the road that the estate could convey in the 1935 deed was the reser-

---

**18.** Point of error number four contains thirty-eight subpoints of error.

**19.** The Templetons previously contended that the 1935 deed conveyed the entire length of the road.

vation of an easement in and to the road. Point of error number four is overruled.

## POINT OF ERROR NUMBER FIVE[20]

The Templetons contend that the trial court reversibly erred by refusing to grant their motion to inspect and survey the 14.9 acres.

On August 10, 1994, the Templetons filed their Motion to Inspect Property. A hearing was conducted on August 12, 1994. At the hearing, the Templetons failed to present any evidence in support of the motion. In fact, the only evidence presented at the hearing was the testimony of Thomas Edward Dreiss in opposition to the motion.

The motion recites the following statement:

[I]t is necessary that Defendant's surveyor, Don Voelkel, be allowed to enter upon Plaintiff's property in order to conduct an in-depth accurate survey of the amount of property contained within Plaintiff's fenceline and in order to verify and double check the various boundaries reported by Voelkel in his January, 1994 survey.

During the course of the hearing it was brought to the attention of the trial court that an earlier survey had been performed in February of 1994. The following colloquy between the trial court and counsel for the Templetons is enlightening:

THE COURT: Now, why do we need it if he did it earlier in the year and he has it? What has developed since that time that makes a difference? That's what I haven't heard.

[COUNSEL FOR THE TEMPLETONS]: Well, obviously, Your Honor, this dispute has arisen since that time.

THE COURT: What is the dispute that shows that their survey was wrong in February?

[COUNSEL FOR THE TEMPLETONS]: Well, Your Honor, the ——

THE COURT: There has to be something that makes it different than when they acquired the property, and I'm asking, because I haven't heard, what has

caused—what has come about that shows their survey or their understanding was wrong in February. What is that?

[COUNSEL FOR THE TEMPLETONS]: Your Honor, our expert feels that it is necessary to go back and double check ——

THE COURT: You see, the expert doesn't make the decisions. I'll overrule the motion at this time. I'll let his deposition be taken and I'll overrule it without prejudice and suggest that if you file a motion to inspect, that it be a surveyor that's not the one that did it in February.

There is nothing in the record demonstrating that the Templetons ever filed a subsequent motion seeking to have a different surveyor perform the requested inspection and survey. The motion does not recite the basis upon which the motion to inspect rests. Nevertheless, on appeal the Templetons rely upon Tex.R. Civ. P. 166b(2)(a) & (c) and 167(1)(b).

Rule 166b(2)(a) & (c) provide in pertinent part:

a. *In General.* Parties may obtain discovery regarding any matter which is relevant to the subject matter in the pending action whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. . . .

\* \* \* \* \* \*

c. *Land.* A party may obtain a right of entry upon designated land or other property in the possession or control of a person upon whom a request or motion to produce is served when the designated land or other property is relevant to the subject matter in the action for the purpose of inspection and measuring, surveying, photographing, testing or sampling the property or any designated object or operation thereon. If a person has a superior right to compel a third person to permit

---

20. Point of error number five contains ten sub-points of error.

entry, the person with the right has possession or control.

Rule 167(1)(b) provides in pertinent part:

\* \* \* \* \* \*

Any party may serve on any other party a REQUEST:

. . .

b. to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon within the scope of Rule 166b.

Appellate review of the trial court's disposition of a motion for discovery is limited to determination of whether or not the trial judge abused the legal discretion vested in him. *Johnson v. Logwood,* 430 S.W.2d 679, 680 (Tex.Civ.App.—Texarkana 1968, writ ref'd n.r.e.). Generally, requested information is discoverable absent a valid objection, *Texaco, Inc. v. Dominguez,* 812 S.W.2d 451, 454 (Tex.App.—San Antonio 1991, orig. proceeding), and the burden is on the party resisting a discovery request to plead and prove the basis of his objection to the requested discovery. *General Elec. Co. v. Salinas,* 861 S.W.2d 20, 23 (Tex.App.—Corpus Christi 1993, orig. proceeding). Thus, the trial court abuses its discretion in preventing discovery when no evidence is presented substantiating an objection to such discovery. *Id.*

In the instant case, only Dreiss presented evidence, in opposition to the motion. He testified that permitting the Templetons' surveyor onto the 14.9 acre tract would cause damage to the property.

[ATTORNEY FOR DREISS] Q. All right. How many different trees have you planted on this property as part of that program?

[DREISS] A. We have over 100 varieties of trees.

Q. All right, and what would a survey do to those trees?

A. It would do a couple of things: It would damage them when they cut the survey lines, plus it would propagate oak decline, which is prevalent in that area.

Q. And have you had a problem with oak decline in that area?

A. We sure have.

Under the circumstances presented by the appellate record, the trial judge's action was well within the bounds of the discretion allowed him. No good reason was demonstrated for the allowance of a second survey by the same surveyor. Point of error number five is overruled.

### POINT OF ERROR NUMBER SIX[21]

The Templetons' sixth point of error asserts that the trial court reversibly erred by ordering the preparation of a new survey to be attached to the judgment after the evidence had closed. The Templetons also complain of the trial court's denial of their motion to reopen for additional evidence.

The parties closed and presented final arguments on December 9, 1994. The trial court, however, requested that trial briefs be submitted prior to making its final ruling. Trial briefs were prepared and filed by both sides. The trial court issued its letter opinion by January 27, 1995 requesting that the final judgment be prepared in accordance with his letter opinion. The trial court further requested that a metes and bounds description of the roadway be made and attached to the final judgment along with the Simpson survey dated September 13, 1994.

The Templetons objected to the attachment of the exhibits to the judgment because the exhibits had been prepared after the trial on the merits. The Templetons claimed constitutional due process violations as well as violations of the discovery process. *See* TEX.R. CIV. P. 166(b), 167, 168, 215. At the hearing on the Dreisses' Motion to Enter Judgment conducted on June 20, 1995, the Templetons withdrew objections to the Simpson survey but continued to object to the attachment of the metes and bounds plat

---

**21.** Point of error number six contains three sub- points of error.

prepared post trial on the basis of hearsay. The Dreisses offered to voluntarily make available the witness, Kevin Conroy, so that the Templetons might examine the preparer of the document. However, the trial court refused both, the request and tender, by the parties and did not permit further evidence to be presented.[22] We must decide whether the trial court's refusal to permit the Templetons to reopen for the purpose of testing the correctness of the post trial plat constitutes error requiring reversal.[23]

The Templetons contend that it was error to prepare the plat because there was no evidence submitted at trial on the merits to adequately describe the road by metes and bounds such that the road could be located with any certainty. As we have heretofore recognized, there was no evidence of a metes and bounds description of the road raised by the evidence. Nevertheless, the law does not require a metes and bounds description where a description is provided in some other definite manner. *Steahr,* 535 S.W.2d at 41.

We have already found abundant evidence in the record that there is provided more than adequate means of locating the road on the ground based on information contained in the 1933 deed. Therefore, a metes and bounds description is not necessary to sustain the trial court's findings. The question narrows down to whether we should reverse the court's judgment because an ex parte exhibit has been attached.

■ It is clear that the trial court's intention was to clarify, by a metes and bounds description, the narrative evidence adduced at trial. As such the plat is nothing more than a technical description of property already located by other means. But the correctness of that description has never been tested.

The Templetons rely on *Bell v. Rains County,* 326 S.W.2d 189, 190 (Tex.Civ.App.—

Texarkana 1959, no writ) and *Brown v. Woods,* 300 S.W.2d 364, 367 (Tex.Civ.App.—Waco 1957, no writ). In *Bell v. Rains County,* the judgment was reversed because it contained a metes and bounds description of a road in question when the evidence, in fact, did not support the entry of such a description. *Bell,* 326 S.W.2d at 190–91. In *Brown v. Woods,* the trial court rendered judgment for a specific metes and bounds easement when no evidence was introduced to prove that the roadway described in the judgment was the same roadway described in the pleadings.

In reversing the judgment, the *Brown* court stated:

There was no evidence introduced during the trial of the case as to any metes and bounds description of the old road, or of the new road. It appears that after the evidence was closed, and after the Court had announced its judgment and decision in favor of appellees, the Court, of its own motion, ordered a survey to be made of the new road, but there is no showing in the record as to how the surveyor secured the information which he used as a basis for making the survey, the results of which are incorporated in the judgment. We think the Court erred in rendering judgment in favor of appellees for the use of the roadway specifically described by metes and bounds, when there was neither pleading nor evidence to support such judgment.

*Brown,* 300 S.W.2d at 367.

We think the holding in *Brown* is persuasive. As in that case there is no showing in the record as to how the surveyor secured the information which he used as a basis for making the survey.

The right to a trial requires a judicial examination of every issue that, according to established procedure, may affect the attainment of a legal trial, and in such a trial

---

22. The trial court's reasoning is reflected by the following remark:

What I decided was that based on the evidence that the road was identifiable and could be surveyed and so I told him to go out and survey that road that I decided could be identified.

23. Tex.R. Civ. P. 270 provides:

When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time; provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury.

determine the cause according to law. It also includes an opportunity to cross-examine witnesses, to produce witnesses, to be heard on questions of law, and the right to have judgment rendered after trial. *See Derbigny v. Bank One*, 809 S.W.2d 292, 295 (Tex. App.—Houston [14th Dist.] 1991, no writ); *In Interest of B.M.N.*, 570 S.W.2d 493, 502 (Tex.Civ.App.—Texarkana 1978, no writ). The procedure employed by the trial court in including a metes and bounds description in its judgment without such evidence in the record and without an opportunity for the Templetons to test the correctness of the description is inherently unfair and violative of procedural due process.

We sustain the Templetons' point of error number six, reverse that part of the judgment of the trial court that purports to attach a metes and bounds description as an exhibit without opportunity for cross-examination, and remand for a hearing which preserves and safeguards the constitutional right of cross-examination. We commend the trial court's well founded intentions and approve of the procedure utilized. The correct metes and bounds description should once again be a part of the judgment after it is developed at a constitutionally protected hearing.

### POINT OF ERROR NUMBER SEVEN

The Templetons next assert that the trial court erred when it found that the southwesterly boundary of the 14.9 acre tract had been agreed to and acquiesced in between the owners of the respective tracts until disputed by the Templetons.

■■■ The record reflects that ownership of the 14.9 acre tract has never been contested. Moreover it was uncontroverted that William Franklin Dreiss and Ruth Dreiss own the 14.9 acre tract by virtue of the 1933 deed which described the 14.9 acre tract by metes and bounds. Finally, the description of the 14.9 acre tract contained in the 1933 deed was never in issue during the trial on the merits. Complaint about the tract's description may not be made for the first time on appeal. *State of Cal. Dep't of Mental*

*Hygiene v. Bank of S.W. Nat'l Ass'n*, 163 Tex. 314, 354 S.W.2d 576, 581 (1962); *McDuffie v. Blassingame*, 883 S.W.2d 329, 335 (Tex.App.—Amarillo 1994, writ denied). The point of error is overruled.

### POINT OF ERROR NUMBER EIGHT[24]

■■■ The Templetons allege that the trial court reversibly erred when it granted the Dreisses' Motion to Quash the oral deposition of William Franklin Dreiss.

The Templetons gave notice of their intention to take the oral deposition of William Franklin Dreiss and scheduled the deposition to commence on August 15, 1994. In response, Thomas Edward Dreiss, as the duly appointed attorney-in-fact for his parents filed a Motion to Quash the Notice of Intention to Take the Oral Deposition alleging that his seventy-three year old father, William Franklin Dreiss was medically disabled from participating in the lawsuit or from giving a deposition. Dreiss supplemented his Motion to Quash with a medical narrative drafted by William Franklin Dreiss' personal physician, Robert E. Stevens, requesting that William Franklin be excused from participating in the trial due to numerous medical conditions.

A hearing was conducted on August 12, 1994 before the Honorable James C. Onion, retired judge sitting by assignment, who entered an order granting the Dreisses' Motion to Quash and prohibiting the involvement of William Franklin Dreiss in any manner in the pending lawsuit.

At the hearing, the trial court agreed to hold the motion to quash in abeyance and to allow the Templetons to again raise the issue at a later date if there were any change in the medical condition of William Franklin Dreiss.

Counsel for the Templetons made a further suggestion and the following ensued:

[COUNSEL FOR THE TEMPLETONS] Ms. Priesmeyer: Again, Your Honor we would just simply pray that, you know, considering Mr. Dreiss' medical condition, that we perhaps be allowed to talk with the doctor and perhaps agree on a

---

24. Point of error number eight contains eighteen subpoints of error.

time that is convenient and safe, considering Mr. Dreiss' health.

[COUNSEL FOR DREISS] Mr. Pipkin: We'd agree to that.

THE COURT: All right, fine.

. . .

MS. PRIESMEYER: We'll just talk to the doctor to see if possibly there is a time and a situation that would not be stressful to your father, where we could conduct the deposition.

MR. PIPKIN: I don't see anything wrong with that. I mean I think the certificate is pretty clear on what he's going to say.

THE COURT: Well, let her talk to him and see what they can work out. Things may change; may not change.

There is no indication in the record that the Templetons made any further effort to depose or subpoena[25] William Franklin Dreiss for trial, which did not commence until December 6, 1994, some four months later. Nor is there any indication that the Templetons followed up on the suggestion proposed to the trial court. Moreover, the Templetons were on notice since the filing of the lawsuit that the action was not being prosecuted by William Franklin Dreiss and wife in their own capacity but in a represented capacity because of health reasons. Notwithstanding, the Templetons did not request a continuance or other delay, but instead unqualifiedly announced ready for trial when the trial court called the case for hearing. It is apparent that the Templetons did not deem the testimony of William Franklin Dreiss crucial to their case inasmuch as no further complaint appears in the record until the instant complaint on appeal. We find nothing in the record to suggest that the trial court abused its discretion in qualifiedly granting the motion to quash. Neither are we persuaded that the trial court's ruling was reasonably calculated to cause and probably caused the rendition of an improper judgment. Point of error number eight is overruled.

## POINT OF ERROR NUMBER NINE[26]

■ Point of error number nine alleges that the evidence is legally and factually insufficient to support the trial court's grant of a permanent injunction.[27] It is contended that the injunction issued solely upon the hearsay testimony of Thomas Edward Dreiss and that in any event, his testimony failed to establish the "impendency of an authorized act."

The Dreisses' petition alleged that Templeton had approached William Franklin Dreiss early one morning to discuss a boundary dispute, that during the discussion Templeton claimed to own the road and certain property within the perimeter of Dreiss' 14.9 acre tract and that Templeton threatened to gate and lock the road, restrict access to the road and other additional land claimed by Dreiss and move the existing fence line.

Thomas Edward Dreiss testified that his father, William Franklin Dreiss, had contacted him early one morning immediately after an unexpected visit from Templeton. According to Thomas, his father was very upset

**25.** A party is not required to attend court during the trial unless the opposite party has secured his attendance as a witness by the process of the court. *See* Tex.R. Civ. P. 179; 97 C.J.S. § 15 (1957).

**26.** Point of error number nine contains one subpoint of error.

**27.** The injunctive portion of the judgment complained about reads:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED the Road is to provide *free and uninterrupted access* for Plaintiff, Defendants and their respective successors in title and that Defendants and their successors in title are permanently enjoined from interfering with the free and uninterrupted use of the Road by William Franklin Dreiss and Ruth Dreiss and their successors in title, except that the Bluff Gate, being that gate identified as "Locked Gate" on that one certain survey prepared on September 13, 1994, by Byron L Simpson, a true and correct copy of which is set forth in Exhibit "A," and the Lower Government Road Gate, being that gate located at the intersection of the Road and the Lower Government Road near the north bank of the Guadalupe River, may be locked with interlocking chains/locks in such a manner that William Franklin Dreiss, Ruth Dreiss, Defendants and their respective successors in title may open said gates by unlocking their own chain/lock.

and under stressful excitement, partially because his daughter had recently been killed in a car accident and primarily because Templeton had informed him that he would have to move his fence line, move his road, and move his gate to his house. Additionally, Templeton was threatening to install two gates on the road, one at the San Antonio/Fredericksburg Road entrance and the other where he had the property. Moreover, Templeton was not going to allow Dreiss to use the road to the river bottom, to the Lower Government Road and to the crossing. William further stated to Thomas that Templeton had shown him new survey pins which had been set on the Dreiss property.

■ Counsel for Templeton objected to the proferred testimony on the basis of hearsay and deprivation of opportunity to cross examine the declarant. The trial court advised that he would consider the statements attributed to William Franklin Dreiss as res gestae statements and excited utterances and would disregard other statements attributed to William Franklin not coming within the hearsay exception.[28]

Templeton likewise testified and admitted to the conversation with Dreiss but denied any threats and characterized the meeting as cordial. Templeton specifically denied threatening to tear down fences and trees, or to bulldoze Dreiss' property. He admitted, however, to confronting Dreiss about discrepancies he had found in a recent survey he had procured. Templeton described Dreiss as becoming "really concerned and confused" and remembered telling Dreiss not to get too excited. Templeton also admitted pointing out the new survey stakes to Dreiss, discussing moving the fence line and locking one of the gates without notifying Dreiss. In essence, Templeton corroborated much of what William Franklin told Thomas Edward Dreiss.

Additionally, Clarence Hines Voigt, one of Templeton's neighbors, testified that Templeton cut his fence and bulldozed his property. This testimony lends confirmation and credibility to Dreiss' expressed concerns arising from Templeton's confrontation.

■ It is generally held that the trial court has considerable discretion in passing upon the admissibility of a statement offered as a part of the res gestae. *El Rancho Restaurants, Inc. v. Garfield,* 440 S.W.2d 873, 878 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.); *Texas Employers Ins. Ass'n v. Noel,* 269 S.W.2d 835, 839 (Tex.Civ. App.—Fort Worth 1954, writ ref'd n.r.e.). Nevertheless, the question as to whether or not evidence is admissible as res gestae remains a law question which the reviewing court has the same power to pass on as it has to pass on any other law question. *Pacific Mut. Life Ins. Co. of Calif. v. Schlakzug,* 143 Tex. 264, 183 S.W.2d 709, 712 (1944).

■ One seeking to have hearsay declarations of a witness admitted as an exception to the general rule must clearly show that they are within the exception. *Skillern & Sons, Inc. v. Rosen,* 359 S.W.2d 298, 301 (Tex.1962).

TEX.R. CIV. EVID. 802 provides:

Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court or by law. Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay.

TEX.R. CIV. EVID. 803 provides in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(1) **Present Sense Impression.** A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

(2) **Excited Utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

---

28. In reviewing a cause tried before the court, the appellate court generally assumes that the trial court disregarded any incompetent evidence. *Gillespie v. Gillespie,* 644 S.W.2d 449, 450 (Tex.1982).

It has been held that all declarations or exclamations which are made under circumstances which raise a reasonable presumption that they are the spontaneous utterances of thoughts created by or springing out of the transaction itself and so soon thereafter as to exclude the presumption that they are the result of premediation or design are admissible as res gestae. *See Pacific Mut. Life Ins. Co. of California*, 183 S.W.2d at 712.

■ Moreover, for declarations to be admissible in evidence as part of the res gestae they must be made in connection with an act proven. In other words, there must be evidence of an act itself admissible in the case independently of the declaration that encompasses it. *Hartford Accident & Indem. Co. v. Hale*, 400 S.W.2d 310, 314 (Tex.1966); *Truck Ins. Exchange v. Michling*, 364 S.W.2d 172, 175 (Tex.1963);. And if they are not in their nature a part of the fact, they do not constitute a part of the res gestae and are inadmissible, though closely related in point of time. *Skillern & Sons, Inc.*, 359 S.W.2d at 304.

■ Under one of the exceptions to the hearsay rule, spontaneous utterances which flow from a traumatic or startling event are admissible to prove the truth of the utterance. The rationale behind this exception is that one is normally incapable of guile or cool reflection while still under the emotional impact of the event, and any statements made while in such a condition are likely to be truthful. *Jones v. Hopper*, 506 S.W.2d 768, 770 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ). We believe that the statements attributed to William Franklin Dreiss meet the conditions for admissibility under Rule 803(2) of Civil Evidence. The evidence establishes a startling event and statements made while still under the emotional impact of the event. The event itself is independently shown, *see Richardson v. Green*, 677 S.W.2d 497, 500 (Tex.1984), and in fact, it is not controverted, although the ex-

act statements are denied. Moreover, it is shown that they were made "immediately" [29] after the event giving rise to a presumption that the startling event was simply voicing itself through the witness. The trial court did not err in admitting the statements into evidence, as an exception to the hearsay rule. *Cf. State Farm Fire & Casualty Co. v. Ulteig*, 367 S.W.2d 898, 903 (Tex.Civ.App.—Waco 1963, writ ref'd n.r.e.). But if we are wrong as to the nature of the statements, their admission, if error, can only be harmless error. Much of the testimony complained about was admitted by Templeton in his testimony, thus rendering the evidence cumulative. *See Nance v. McClellan*, 126 Tex. 580, 89 S.W.2d 774, 778 (1936); *Griggs Furniture Co. v. Bufkin*, 348 S.W.2d 867, 871 (Tex.Civ.App.—Amarillo 1961, writ ref'd n.r.e.); *Jones v. Texas Farmers Tel. Co.*, 332 S.W.2d 378, 382 (Tex.Civ.App.—Austin 1960, writ dism'd w.o.j.) As the trier of fact, the trial court was free to believe either version.

We find the evidence legally and factually sufficient to support the trial court's grant of a permanent injunction and, accordingly, we overrule the Templetons' point of error number nine.

### POINT OF ERROR NUMBER TEN

The Templetons next allege that the trial court erred when it found that no part of the road was acquired by adverse possession.[30] The contention in reality is that the trial court failed to find that adverse possession was perfected by the Templetons' predecessors since 1940.

■ By attacking the legal sufficiency of an adverse finding on an issue in which they had the burden of proof, the Templetons must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

■ In reviewing a "matter of law" challenge, we use a two prong test. We first

---

**29.** Although the exact time that elapsed between the event and the telephone call is not revealed by the record the rule does not depend alone upon proximity of time. *City of Austin v. Johnson*, 195 S.W.2d 222, 228–29 (Tex.Civ.App.—Austin 1946, writ ref'd n.r.e.).

**30.** The Templetons pleaded the three, five, ten and twenty-five year statutes of limitations, but only urge the five and ten year statutes on appeal.

examine the record for evidence that supports the finding, and ignore all evidence to the contrary. *Id.* If there is no evidence to support the finding we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* If the contrary proposition is established conclusively by the evidence, the point of error will be sustained. *Meyerland Comm. Impr. Ass'n v. Temple,* 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Notwithstanding the rules stated, it has been said that a factfinder's failure to find a fact need not be supported by evidence, since the factfinder is free to disbelieve the witnesses of the party bearing the burden of proof. *See Yap v. ANR Freight Sys. Inc.,* 789 S.W.2d 424, 428 (Tex.App.—Houston [1st Dist.] 1990, no writ).

We will address the Templetons' tenth point of error with these rules in mind.

 The Templetons' argument assumes that the road passed to Ernst Dreiss under the 1935 deed and finally to them by way of mesne conveyances.[31]

Other circumstances relied upon by the Templetons in an effort to establish adverse possession are as follows:

(1) a claim that their predecessors in title paid taxes on the full 67.9 acres and the twenty foot strip;

(2) a claim that their predecessors in title moved the twenty-foot strip and road within the 67.9 acre tract;

(3) a claim that their immediate predecessor in title paved a portion of the road in 1960;

(4) a claim that their immediate predecessor in title maintained the twenty-foot strip and built a gate at the entrance from the San Antonio/Fredericksburg Highway;

(5) a claim that their immediate predecessor in title placed their name on the front gate;

(6) a claim that the lower portion of the road was washed away in 1952 and does not exist any longer;

(7) a claim that the entire portion of the road was tilled and planted with coastal bermuda;

(8) a claim that a gate leading to the lower area was locked by their immediate predecessor in title to keep the Dreiss family from using the road; and

(9) a claim that the Dreisses knew the Templetons' immediate predecessor in title was claiming the road adversely to them.

 Adverse possession has been defined as the actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and hostile to, the claim of another. *See* TEX. CIV. PRAC. & REM.CODE § 16.021 (Vernon 1986). The burden of proving actual and visible appropriation of land in this case, rested on the Templetons, as claimants. *Wall v. Carrell,* 894 S.W.2d 788, 799–800 (Tex.App.—Tyler 1994, writ denied). To establish title through adverse possession, the possession must be of a character that indicates unmistakably an assertion of a claim of exclusive ownership in the occupant, *Clements v. Corbin,* 891 S.W.2d 276, 278 (Tex. App.—Corpus Christi 1994, writ denied), that is, the adverse claimant must affirmatively show exclusive dominion over the claimed property. *Humphreys v. Gribble,* 227 S.W.2d 235, 237 (Tex.Civ.App.—Waco 1950, writ ref'd n.r.e.). The exclusiveness of the limitation claimant's possession is ordinarily a fact issue to be determined by a court or a jury. *Ogletree v. Evans,* 248 S.W.2d 804, 807 (Tex.Civ.App.—Beaumont 1952, writ ref'd n.r.e.).

 In determining whether possession of the claimed land was exclusive, all evidence must be considered. *Lozica v. Celli,* 367 S.W.2d 75, 81 (Tex.Civ.App.—Houston 1963, no writ). The evidence, as seen from the trial court's vantagepoint, reflects that the Templetons' predecessors in title were never in exclusive possession of the road during the relevant periods. Thomas Edward Dreiss and Richard Dreiss both testi-

31. Where a party claims land as a part of the land conveyed by deeds, such deeds are admissible to show the time each adverse claimant purchased the land, but the actual possession of the land cannot be shown by the deed and must be shown by the evidence. *Abramson v. Sullivan,* 103 S.W.2d 229, 232 (Tex.Civ.App.—Austin 1937, no writ).

fied to extensive use of the road by the Dreiss family for many years. The Dreisses acknowledged use of the road by Templetons' predecessors in title; however, they recognized their right to such use under the easement established and referred to in the 1933 deed. At most, the evidence established a shared use and possession of the road since the partitioning of the original 82.8 acre estate in 1933.

▮ The Templetons also rely on a theory of succeeding cotenancies and a subsequent ouster. They argue that they and their predecessors in title were cotenants with the Dreisses. It is true that to satisfy a limitations period, peaceable and adverse possession need not be continued in the same person; however, where possession is held by different persons successively, there must be privity of estate between them. TEX. CIV. PRAC. & REM.CODE § 16.023 (Vernon 1986). To show privity of estate with prior possessors, the adverse claimant has to show a transfer and delivery of possession from one possessor to the next. *Fish v. Bannister,* 759 S.W.2d 714, 717 (Tex.App.—San Antonio 1988, no writ); *Abramson v. Sullivan,* 103 S.W.2d 229, 231 (Tex.Civ.App.—Austin 1937, no writ).

▮ In order to establish adverse possession the claimant must also show that his possession of the land was hostile to the owner, *see Porter v. Wilson,* 389 S.W.2d 650, 658 (Tex.1965), and that it was consistently and continuously so for the duration of the statutory period. *Balli v. McManus,* 311 S.W.2d 933, 936–37 (Tex.Civ.App.—San Antonio 1958, writ ref'd n.r.e.); *Bowles v. Watson,* 245 S.W. 120, 122–23 (Tex.Civ.App.—Amarillo 1922, no writ). The test of hostility, is whether the acts performed by the claimant on the land and the use made of the land were of such a nature and character as to reasonably notify the true owner of the land that a hostile claim was being asserted to the property. *Winchester v. Porretto,* 432 S.W.2d 170, 174–75 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.).

**32.** The payment of taxes is some evidence of the hostility of the possessor's claim, but it is not sufficient to establish adverse possession as a matter of law. *Rhodes v. Cahill,* 802 S.W.2d 643,

▮ Whether a claimant's possession was hostile is ordinarily a question of fact. *See Texas Life Ins. Co. v. Goldberg,* 165 S.W.2d 790, 793 (Tex.Civ.App.—Waco 1942, writ ref'd). The same holds true for a claim that possession was continuous. *See Hankamer v. Sumrall,* 257 S.W.2d 827, 832 (Tex.Civ. App.—Beaumont 1953, writ ref'd n.r.e.).

▮ William Busbee, the Templetons' immediate predecessor in title, testified that he had locked the Dreiss family out of a portion of the road. Thomas and Richard Dreiss both controverted Busbee's testimony. According to the Dreisses, the lock in question was placed on the gate by the Busbees with the consent of the Dreiss family in order to secure the property against trespassers. In like manner, the Templetons' contention that their predecessors in title had paid taxes [32] on the road was directly controverted by the testimony of Betty Asher, the Kendall County Tax Assessor–Collector who insisted that the road had never been taxed.

▮ The record reflects that each and every circumstance relied upon by the Templetons in urging adverse possession finds direct contradiction in the evidence. The evidence on adverse possession presented nothing more than an opportunity for the trial court, as factfinder, to weigh the credibility of the witnesses, draw inferences and make reasonable deductions from the evidence and to believe or disbelieve all or part of it. *See Traweek v. Larkin,* 708 S.W.2d 942, 945–46 (Tex.App.—Tyler 1986, writ ref'd n.r.e.). The trial court's findings on issues of fact, where drawn from conflicting evidence, are binding on this court. *Fender v. Schaded,* 420 S.W.2d 468, 473 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.). The trial court did not err in failing to find that the Templetons had perfected title to the road by adverse possession through predecessors in title. Point of error number ten is overruled.

**POINT OF ERROR NUMBER**

645–46 (Tex.1990); *Dellana v. Walker,* 866 S.W.2d 355, 361 (Tex.App.—Austin 1993, writ denied).

## ELEVEN[33]

The Templetons' final point of error asserts error by the trial court in awarding attorney's fees and costs [34] because the evidence is legally and factually insufficient to support the award.

The Templetons also allege abuse of discretion on the part of the court in awarding attorney's fees in the amount of $50,000.00. Argument is made that the amount awarded was not merited because the Templetons' own attorney fees only amounted to $26,-000.00. It is claimed that the amount awarded is the result of needless witnesses' inadmissible testimony and other unnecessary extrinsic evidence. Complaint is specifically made of the admission of testimony regarding the construction to be placed on the 1933 deed and the 1935 deed. Finally it is urged that the Dreisses were not entitled to an award of attorney's fees pursuant to the Uniform Declaratory Judgment Act because they had invoked the Act by way of counterclaim.

 The Texas Uniform Declaratory Judgment Act provides that the trial court may award reasonable and necessary attorney's fees as are equitable and just. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). The award of attorney's fees is not limited to the plaintiff or the party affirmatively seeking declaratory relief. When a claimant has properly invoked the declaratory judgment statute, either party may plead for and obtain attorney's fees. *Estopar Holdings, Inc. v. Advanced Metallurgical Technology, Inc.,* 876 S.W.2d 205, 211 (Tex.App.—Fort Worth 1994, no writ); *Knighton v. International Business Machines Corp.,* 856 S.W.2d 206, 210 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *First Nat'l Bank at Lubbock v. John E. Mitchell Co.,* 727 S.W.2d 360, 363 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.).

Whether to grant or deny attorney's fees in a declaratory judgment action is within the trial court's sound discretion. *McLendon v. McLendon,* 862 S.W.2d 662, 672 (Tex.App.—Dallas 1993, writ denied); *International Ins. Co. v. Dresser Indus. Inc.,* 841 S.W.2d 437, 447 (Tex.App.—Dallas 1992, writ denied).

In the present case, it was the Templetons who invoked the act by way of counterclaim to the Dreisses' petition seeking injunctive relief. But in any event, once the act was properly invoked, the trial court could award attorney's fees to either party, as equity and justice required, *Knighton,* 856 S.W.2d at 210, provided the court's discretion was not abused. Therefore, abuse of discretion is the issue to be reviewed.

 The Dreisses' attorney testified that the amount of time which he was required to expend in the lawsuit was due in large part to "outrageous behavior" of the Templetons' attorney. The record reflects that the Templetons filed a Motion for Sanctions against Dreiss and that, after a hearing, the trial court overruled the motion and sua sponte awarded sanctions against the Templetons' attorney in the amount of $1,000.00. The record reflects other questionable conduct attributable to the Templetons' attorney including some apparent during the appellate process.[35]

Moreover we judicially notice the volume of documents comprising the transcript, statement of facts and exhibits. *See City of Fort Worth v. Groves,* 746 S.W.2d 907, 918 (Tex.App.—Fort Worth 1988, no writ). Drawing on our experience and common knowledge as lawyers and judges we cannot say that the trial court abused its discretion in awarding the amount of $50,000.00. The testimony before the trial court, if believed, clearly supports an amount in excess of that awarded. The fact that the Templetons' attorney's fees were less than the fees of the

---

**33.** Point of error number eleven contains eleven subpoints of error.

**34.** The issue of costs has not been briefed and is, therefore, abandoned and waived.

**35.** See note 7, supra.
 Almost without exception, each point of error has been presented in an abusively multi-farious manner, no doubt in an effort to circumvent this court's order of November 1, 1966 ordering rebriefing. Nevertheless, we have, with due regard to the Templetons' right of appellate review, attempted to address each identifiable issue without doing an injustice to the appellate process.

Dreisses' attorney in no way diminishes their reasonableness or necessity. We will not second guess the trial court's reasoning in arriving at the amount awarded so long as it is within the proof adduced. In the absence of a clear abuse in setting the amount, we will not disturb the award.

The Templetons also complain of the court's reception of expert testimony on a legal issue without identifying the specific witness complained about or referring to the statement of facts as required by the rules of appellate procedure. *See* TEX.R.APP. P. 74(d), (f).

We note however that Norman L. Nevins, Karl H. Pfeiffer, Bill Palmer and J. Rick Day all testified as witnesses for the Dreisses. Nevins and Pfeiffer are practicing attorneys. Palmer is an attorney and president of Guaranty Title Company, and Day is an attorney and president of Marathon Title Company. The Templetons argue that the trial court violated Rule 702 of the Texas Rules of Civil Evidence by permitting an attorney to testify "regarding the state of the law."

Rule 702, titled Testimony by Experts, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

It is suggested that the trial court should have employed the procedure outlined in TEX.R. CIV. EVID. 201 (Judicial Notice of Adjudicative Facts). The Templetons cite us to *Strickland v. Humble Oil & Refining Co.,* 140 F.2d 83, 86 (5th Cir.1944) and *Hartley v. Coker,* 843 S.W.2d 743, 746 (Tex.App.—Corpus Christi 1992, no writ). We need not, however, dwell on the propriety of Rule 201 because the Templetons acknowledge the holding in *Transport Ins. Co. v. Faircloth,* 861 S.W.2d 926, 938–39 (Tex.App.—Beaumont 1993), *rev'd on other grounds,* 898 S.W.2d 269 (Tex.1995), and recognize that an expert's testimony is admissible to the extent that it will "assist the triers of fact to understand the evidence before them."

The trial court, in the instant case and in response to the Templetons' objections stated, "[t]his is very [sic] specialized field ... and it requires very specialized knowledge. I think it's going to assist me as trier of the [sic] fact to understand the nature of construing deeds when they're going to write a title policy, when they're going to go out and have a survey on it or when you're going to put it in a document that's going to transfer title." The trial court further stated, "I'm going to cull out everything that is legal opinion and I'll make the legal opinion, but I'm going to let him tell me the context of his training in order to give me some technical expertise for interpreting the deed."

■ The general rule is that expert opinion testimony is not usually admissible on a question of law. *Carr v. Radkey,* 393 S.W.2d 806, 812–13 (Tex.1965). But where the words or phrases are technical and aid is needed in their interpretation there is no prohibition against the use of expert opinion testimony. 2 ROY R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1425 (Texas Practice 1980); *see Southwest Indus. Inv. Co. v. Greene Home Owners Ass'n, Inc.,* 608 S.W.2d 758, 760–61 (Tex.Civ.App.—Dallas 1980, no writ).

■ We think the trial court correctly placed a limitation on the expert opinion testimony. In any event, we are unable to say that the reception of such testimony was reasonably calculated to cause and probably did cause rendition of an improper judgment. This is especially so because the Templetons have not, with any particularity, pointed to the claimed error other than in general and vague terms. Point of error number eleven is overruled.

### THE DREISSES' CROSSPOINT

The Dreisses' single crosspoint alleges that the trial court erred in not awarding them reasonable and necessary attorney's fees in the amount of $73,476.50 because there was no controverting evidence disputing the amount.

We note from the record that the amount of attorney's fees and their necessity was highly disputed by way of cross examination.

It would not, therefore, be fair to say that there was no controverting evidence.

Since the awarding of attorney's fees was within the sound discretion of the trial court, the amount awarded falls within the same exercise of discretion. The Dreisses' contention that an uncontroverted amount requires the award of that amount runs contrary to the idea of exercise of discretion. Taken to its ultimate conclusion, the Dreisses' argument compels the award of an amount as a matter of law. Such is not the law. Moreover, there has been no showing of abuse of discretion in the amount awarded. The crosspoint is overruled.

The judgment of the trial court is in part affirmed and in part reversed and remanded to the trial court for proceedings in accordance with this opinion.