**Opinion filed August 2, 2012**



## In The

# Eleventh Court of Appeals

_____

### No. 11-10-00212-CV

_____

## NATHAN PARK, INDIVIDUALLY AND D/B/A
## PARK MOWING SERVICE, Appellant

### V.

## CLAUDE PAYNE D/B/A HASKELL TRACTOR SERVICE, Appellee

**On Appeal from the 39th District Court**

**Haskell County, Texas**

**Trial Court Cause No. 11,528**

### O P I N I O N

Claude Payne d/b/a Haskell Tractor Service filed a breach of contract suit against Nathan Park, individually and d/b/a Park Mowing Service. After a bench trial, the trial court found in favor of Payne and awarded him damages of $13,485 and attorney's fees of $4,432. Park appeals in three issues. We affirm.

Claude Payne owns and operates the Haskell Tractor Service in Haskell, Texas. Haskell Tractor is in the business of right-of-way mowing under contract with the State of Texas and operates in Haskell, Jones, Throckmorton, Knox, and Stonewall counties. Those who want to

bid on the mowing contracts submit sealed bids to the State. As far as the mowing contract for Haskell County is concerned, the sealed bids were submitted to the Texas Department of Transportation in Abilene. The total amount of acreage to be mowed under the Haskell County contract was 6,632 acres, and there were to be three cycles of mowing.[1] Under the contract, the State notifies the contractor when it is time to begin mowing the acreage for a particular cycle. After the mowing has been completed and after a supervisor from the State certifies that the contractor has completed the mowing cycle satisfactorily, the State pays the contractor. The State makes those payments in a month or less after the supervisor certifies that the contractor has satisfactorily completed the work.

In 2006, Haskell Tractor submitted a bid for mowing in Haskell County that was to take place in 2007; it was unsuccessful. Payne talked to the owner of the successful bidder, Park Mowing, about subcontracting the mowing in Haskell County. To that end, Park, the owner of Park Mowing, and Payne signed a contract.

One of the provisions of the contract required that Haskell Tractor give Park "an executed W-9 form and a certificate of insurance showing proof of workers compensation and general liability insurance" naming Park as an additional insured before Haskell Tractor began work under the subcontract. A W-9 is a tax form. Park required the proof of workers' compensation insurance to avoid having to provide workers' compensation insurance on Haskell Tractor's employees. Park needed proof of general liability insurance so that, if there was an accident while Haskell Tractor was performing under the contract, the claim could be made under Haskell Tractor's insurance rather than Park's insurance.

Haskell Tractor did not provide the required documentation to Park. Nevertheless, the State notified Park that it was time to begin the first cycle of mowing in Haskell County. In turn, Park notified Haskell Tractor to begin work. Haskell Tractor performed the mowing work and

---

[1]There is conflicting evidence on how much acreage was in a cycle. At one point, Payne testified that a cycle was the entire acreage of the contract, 6,632 acres. However, there is other evidence in the record that shows 6,632 acres was a cumulative amount of acreage under the contract and not a "per cycle" amount. Park testified that the 6,632 acres was a cumulative amount—equaling two "full width" mows and one "strip" mow. Plaintiff's Exhibit No. 3 gives the acreages that were mowed and the amounts that were paid under the mowing contract. The document lists a "full width mow" as being 2,697 acres, which is 40% of the total acreage. The exhibit then lists a "strip mow" as being 1,238 acres, which is 20% of the total acreage. The exhibit lists the total amount Haskell Tractor was to be paid under the contract as $100,143.20. This amount equals the total acreage amount, 6,632, multiplied by the amount Haskell Tractor was to be paid per acre, $15.10. Payne calculated his lost revenue at $39,925.10. This would have been a mow of 2,644 acres, which is approximately 40% of the total acreage. It is, thus, apparent from the record that a cycle could be as much as 40% of the total acreage of the contract (a "full width" mow) or as little as 20% (a "strip" mow).

notified Park when it was completed. The State paid Park Mowing for the work, and Park Mowing paid Haskell Tractor. Park Mowing also paid Haskell Tractor for the second cycle of mowing in Haskell County. Park did not notify Haskell Tractor that it was time for the third cycle of mowing. Payne noticed that Park Mowing tractors were performing the third cycle of mowing in Haskell County.[2] Payne testified that he called Park, but Park offered no explanation other than to say that he was going to mow the acreage himself.

Park testified that he asked Payne to furnish the required documentation three times, and although Payne promised to send it, he never did. Park testified that he was going to be audited to verify that he had the proper insurance and that, since he did not have the documentation from Haskell Tractor, his company performed the third cycle of mowing in an effort to minimize his liability "in case something happened on the road."

In its first issue, Park Mowing contends that Haskell Tractor violated the contract by failing to give Park Mowing the required documentation prior to the time that it began the work. Essentially conceding that it breached the contract, Park Mowing argues that it was excused from further performance of the contract and that it was justified when it did not allow Haskell Tractor to perform the third cycle of mowing.

"It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). Material breach is an affirmative defense to breach of contract and, as such, must be pleaded. *Compass Bank v. MFP Fin. Servs.*, 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied). However, unpleaded defenses that are tried by the consent of the parties are treated as if they had been raised by the pleadings. *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied). An issue is tried by consent when the record shows that both parties understood the issue in the case and the other party did not complain. *Id.* The record contains extensive testimony that Haskell Tractor failed to provide the required documentation. This testimony was introduced without objection. The record shows that both parties understood that was the issue in the case. Thus, the issue of material breach was tried by consent.

---

[2]The record shows that the full 2,697 acres was mowed for the final cycle.

The trial court entered findings of fact and conclusions of law, but did not make any findings on the defenses of material breach or repudiation.[3] When a trial court does not enter findings that establish any element of the grounds of a defense, the party relying on that defense must request additional findings to avoid a waiver on appeal. *Pinnacle Homes Inc. v. R.C.L. Offshore Eng'g Co.*, 640 S.W.2d 629, 630 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *see* TEX. R. CIV. P. 299 ("The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact."). Park did not request any additional findings on the issue of material breach. Because Park did not request additional findings, he has waived the defense of material breach and our consideration thereof. *Micrea, Inc. v. Eureka Life Ins. Co. of Am.*, 534 S.W.2d 348, 357 (Tex. Civ. App.—Fort Worth 1976, writ ref'd. n.r.e.); *McKenzie v. Carte*, 385 S.W.2d 520, 528–29 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd. n.r.e.); s*ee Puckett v. First City Nat'l Bank of Midland*, 702 S.W.2d 232, 240 (Tex. App.—Eastland 1985, writ ref'd n.r.e.). Park's first issue is overruled.

In his second issue, Park contends that the evidence is legally insufficient to support the trial court's award of $13,485 in damages for lost profits. When we review an issue of legal sufficiency, we consider only the evidence and inferences that tend to support the finding, and we disregard all evidence and inferences to the contrary. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). If the record contains more than a scintilla of evidence supporting the findings, then the no-evidence challenge fails. *Id.*

---

[3]The findings of fact read as follows:

1. Plaintiff and Defendant entered into a Subcontract Agreement dated January 8, 2007.

2. This subcontract provided that Defendant would pay to Plaintiff the sum of $100,143.20 for performance of the Mowing Contract that Defendant had with the Texas Department of Transportation.

3. Plaintiff performed the first two of three phases of the Mowing Contract and was paid $60,218.10 for these two phases.

4. Defendant refused to allow Plaintiff to complete the contract, when Plaintiff was willing and able to complete it.

5. Plaintiff's lost profits on the third phase of the contract is $13,485.00 at $5.00 per acre for 2697 acres.

6. Plaintiff incurred reasonable attorneys fees of $4,432.00.

4

Recovery for lost profits does not require an exact calculation, but the injured party must do more than show it suffered "some lost profits." *Id.* "The amount of the loss must be shown by competent evidence with reasonable certainty." *Id.* "As a minimum, opinions or estimates of lost profits must be based on objective facts, figures or data from which the amount of lost profits can be ascertained." *Id.*

Payne testified that Park would have owed him $39,925.10 for mowing during the last cycle. He further testified that his profit would have been $5 per acre. As has been previously noted, the acreage mowed in the final cycle was 2,697. Thus, the record shows Payne's lost profits for the last mowing cycle were $13,485. Payne, as the owner of Haskell Tractor, was competent to testify as to his profit margin on lost business. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876–77 (Tex. 2010). The evidence is sufficient to support the award of $13,485 in lost profits. Park's second issue is overruled.

In his final issue, Park contests the award of attorney's fees to Payne. Park concedes that there was enough evidence to support the amount of attorney's fees awarded. He argues that, because no damages should have been awarded, an award of attorney's fees must necessarily fail since attorney's fees ordinarily are not appropriate when damages are not awarded. We have, however, found the evidence sufficient to support the award of damages. Park's argument is inapposite, and his third issue is overruled.

The judgment of the trial court is affirmed.


ERIC KALENAK
JUSTICE


August 2, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

5