In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-20-00173-CV**

**GENE DAVIS SAND & MATERIALS, INC., VIRGIL GENE DAVIS, CARY B. DEAN, AND JASON R. STEVENSON, Appellants**

**V.**

**WILLIAM EDWARD WINFREE, Appellee**

---

**On Appeal from the 163rd District Court
Orange County, Texas
Trial Cause No. B190053-C**

---

**MEMORANDUM OPINION**

The appeal involves a title dispute between adjoining property owners over certain real property created by a property description that was altered from the original deed recorded in 1998, in a subsequent deed prepared in 2014.[1] The trial court found the original deed prepared in 1998 to be the controlling deed and entered

---

[1] Appellants' suit against a title company was severed out and is not a part of this appeal.

a judgment voiding the 2014 deed's property description to the extent it differed from the original property description contained in the 1998 deed; the trial court also awarded attorney's fees to Appellee as the prevailing party. In three issues, Gene Davis Sand & Materials Inc., Virgil Gene Davis, Cary B. Dean, and Jason R. Stevenson argue that the trial court erred in finding that William Edward Winfree is the legal owner of the disputed real property, in finding, as a matter of law, that Appellants' cross-claims challenging alleged errors in the original property description contained in the 1998 deed are barred by limitations, and in awarding attorney's fees in a suit to quiet title, as well as awarding attorney's fees and appellate attorney's fees that were not shown to be reasonable, necessary, equitable or just. We affirm in part and reverse and render in part.

## Background

In 1998, Winfree owned a large 1600-acre tract of land in Orange County (the Parent Tract). At that time, Virgil Davis approached Winfree about his company, Gene Davis Sand & Materials, Inc., purchasing "approximately 50 acres" (the Property) out of Winfree's Parent Tract of land. Davis wanted to purchase the land to expand his sandpit business.[2] As part of the 1998 earnest money contract, Davis and Winfree made a preliminary drawing of the Property to be purchased and hired

---

[2]Davis is the owner of Gene Davis Sand & Materials, Inc. and both are collectively referred to herein as "Davis."

George Anderson Surveying to prepare a metes and bounds property description and plat for use in the warranty deed. Ultimately, a warranty deed was prepared describing what the 1998 Deed called "53.21 acres, more or less." Winfree testified that Winfree and Davis also agreed that Winfree would retain an easement on the east side of the Property so he could access his other property. The northeast side of the Property abutted a pipeline right-of-way, which was labeled and noted in the survey plat attached to the 1998 Deed. According to Winfree, despite the notation on the earnest money contract plat indicating that the boundary of the Property would extend 25 feet into the cleared right-of-way, he believed the pipeline right-of-way served as a boundary on the northeast side of the Property, and the 53 acres would be southwest of the pipeline right-of-way. A Warranty Deed with Vendor's Lien was prepared and dated August 14, 1998 and recorded under Clerk's File No. 183529, Vol. 1089, Page 312 of the Official Public Records/Deed Records of Orange County, Texas.

In 2014, Dean and Stevenson approached Davis seeking to purchase the Property. In preparation for the purchase, the title company discovered problems with the property description in the 1998 Deed. It was discovered that the metes and bounds property description of the Property contained in the 1998 Deed did not return to the "point of beginning." According to Stevenson, Sabine Title Company corrected the problem, but the title company did not require anything from them to

3

correct the problem. Dean testified that he discussed the issue with Sabine Title Company and the title company had him take some "paperwork" to the original surveyors who had prepared the property description in the 1998 Deed. Dean stated he did not discuss the paperwork with the surveyor or have any further conversations about the interactions between the survey company or the title company. Dean explained that after two months, the title company contacted him and told him "[e]verything's fine[,]" and to come in and sign the paperwork. Dean was not told how the title company corrected the problem or that the title company had created a new legal description for the Property. Dean stated that at no time in 2014 did they discuss the 2014 deeds[3] or description error with Winfree. Stevenson testified that he first discussed the deed descriptions with Winfree in 2018, after they were approached by ExxonMobil seeking to purchase a pipeline right-of-way across or abutting the northeast boundary of the Property.

Mark Anderson testified that he owns a land surveying business, originally established by his father, and the business is 41 years old. Anderson stated that his

---

[3] As part of the conveyance from Davis to Dean and Stevenson, there were two 2014 Deeds created and recorded. One of the 2014 Deeds is from Gene Davis Sand & Materials, Inc. to Virgil Eugene Davis, recorded at Clerk's File No. 405958 of the Official Public Records/Deed Records of Orange County, Texas. The second 2014 Deed is from Virgil Gene Davis as Grantor, to Cary B. Dean and Jason R. Stevenson, as Grantee, recorded at Clerk's File No. 405959 of the Official Public Records/Deed Records of Orange County, Texas. Both of the 2014 Deeds use the same metes and bounds legal description for the Property and will be collectively referenced herein as the "2014 Deeds."

father was a registered land surveyor, and after he passed away, he (Mark Anderson) hired another registered land surveyor to work at the company. According to Anderson, he has been "involved with everything in the day-to-day operation[s]" for 41 years. He stated that although he is not a registered surveyor, he is involved in every survey and "[e]verything goes through me." In 1998, his company was asked to complete the survey for the purchase of the Property by Davis from Winfree. He stated that the survey was "pretty routine" and that he believed Winfree dealt with his father in conducting the transaction, but he ran the surveying crew at the time of this job. Specifically, he recalled the boundary lines as following two existing roadways and a pipeline, stating:

> I remember it being a pretty routine survey for us. I remember I was supposed to tie in a pipeline and a -- which I, at the time, didn't realize it was Old Mansfield Ferry Road -- and then Mansfield Ferry Road on the south side and the Old Mansfield Ferry Road on the east side and then the pipeline on the north side[.]

Anderson testified that the cleared right-of-way of the pipeline was considered a "landmark" and the boundary line would run along the southwest edge of the cleared pipeline right-of-way. He stated the boundary line would not be "north of the pipeline right-of-way[.]" Anderson testified that at some point he was made aware that the 1998 deed description did not close or return the point of beginning, acknowledging that mistakes can happen on occasion. He thus explained the process and how to correct it:

5

Well, it doesn't close. I'm not going to say it -- obviously, it's not an often thing; but it does happen, a lot more often back in the old days when you didn't have computers as prevalent in our work. We have programs today that clearly tell you when it doesn't close when you write a legal -- can I see that plat again? I think -- I know the answer; but I want to make sure, not speculate.

But my dad did -- as you can see, that's a hand-done drawing. It's a not done with AutoCAD. So, my dad would have wrote this legal description and then he would have done a hand-drawing and that's what this represents. So, back in those days -- again, it wasn't often; but we do -- there are correction deeds, things that had to be done for surveys that didn't close.

In 2018, Winfree came to Anderson's office and asked Anderson about the legal descriptions in the 2014 Deeds that the title company prepared for Davis, Dean, and Stevenson. Anderson testified that Winfree brought to his attention that the 1998 description did not return to the point of beginning and Anderson confirmed the discrepancy. An exhibit was entered demonstrating a drawing prepared by Anderson's office comparing the legal description in the 1998 Deed to the legal description in the 2014 deeds. Anderson testified that the 2014 description did not match the 1998 description. According to Anderson, in the 1998 Deed, the southwest edge of the pipeline right-of-way is the northeast boundary of the Property. He stated the legal description in the 2014 Deeds clearly goes across the pipeline right-of-way. Anderson testified that he was part of the original crew that determined the property described and conveyed in the 1998 Deed and "I remember specifically that we were supposed to be on [the] south side of the pipeline." He confirmed that the change in

6

the 2014 Deeds pushed the northern boundary across the pipeline right-of-way to the north side. According to Anderson, although Davis contends the 2014 Deeds made changes to the legal description of the west side of the Property only, the changes also affected the northeast side of the property and pushed the boundary to the north side of the pipeline right-of-way. Anderson testified that the metes and bounds description changes made to the 2014 Deeds attempted to transfer a different piece of property than what was described and conveyed to Davis in the 1998 Deed.

Jimmy Verrett testified that he is a registered professional land surveyor. Verrett stated that in 2018 he was asked by Dean and Stevenson to complete a survey based on the 2014 deed description. He stated that he studied the 1998 Deed and determined the metes and bounds description of the Property in the 1998 Deed did not return to the point of beginning. Verrett testified that both the 1998 Deed and the 2014 Deeds describe the same beginning point. He testified that the language in the 1998 Deed regarding the pipeline "could [or] should have" used more specific language to identify the particular location of the pipeline right-of-way. According to Verrett, in conducting his survey, he could not find clear evidence of markers on the ground to represent the property described in both the 1998 Deed and the 2014 Deeds. He had to reestablish Winfree's boundary lines from the deeds when Winfree originally acquired the Parent Tract. When he attempted to plot the Property on the ground, call 5 of the 1998 Deed and 2014 Deeds indicated it went to a "set spike for

7

corner inside a cleared pipe line R.O.W." Verrett testified that that description probably should have been more clear as to how to identify that particular location. Verrett had to consult other instruments that described those pipeline right-of-ways in question and use whatever markers he was able to find on the ground at the time of his survey. Verrett did not describe further the instruments he consulted nor where they included in the record before the trial court. Verrett described what he considered constituted a "clerical error" in a legal description, stating:

> Typically that would include things like transposing figures in a bearing or distance or just simply typing in the wrong distance or the wrong bearing. Occasionally it involves completely omitting a call or sometimes repeating a call.

He confirmed that there are several pipelines running through the pipeline right-of-way and based on the descriptions in the 1998 Deed, it is not clear which pipeline was used to determine the course and distance of the survey. As a result, Verrett opined that adding a correction for acreage into the marsh area on the southern border of the property in this instance would be considered a clerical error. Elaborating further, he stated that although there are adjustments to the Property description in the 2014 Deeds from the 1998 Deed, the adjustments only consisted of two lines or two calls and both deeds maintain "somewhat the same shape." Verrett represented to the court that the Property described in the 2014 Deeds would push the northern most point of the Property 75 to 100 feet past the pipeline right-of-way.

8

During cross-examination, Verrett agreed that if a deed description other than that used in an original deed was created to represent that same piece of property in subsequent sales, the original seller should be notified of the changes. Verrett also stated that if he was the original surveyor of the Property in the 1998 Deed, he would have had to ask for clarification on the pipeline boundary. Verrett also testified as follows:

> THE COURT: Now, if they hired you to take this and go out there and develop a legal description -- I admit I'm not a surveyor, but I don't know how on earth you'd start. I mean, because the ultimate one by anybody's -- that westerly line's not a straight line. It's got a -- I mean, how do you go from this to developing a legal description?
>
> THE WITNESS: Well, you -- you utilize what you can identify; and it -- it appears that this is identifying Mansfield Ferry Road along the south side –
>
> THE COURT: Got that.
>
> THE WITNESS: -- which is consistent with Mr. Winfree's south line. And then it shows the -- what's identified as a road easement running to the north, and that -- that would -- particularly being somewhat familiar with this property, I would take that to be the -- the old dirt road that at one time was part of Man -- Mansfield Ferry Road. And we -- and then we've got something identified as "pipeline" up here on the north side.
>
> I would endeavor to locate Mr. Winfree's south line; locate the old dirt road; and locate, presumably, a pipeline. Obviously when -- today there's more than one pipeline. I'm not sure what the case was back in '99, whether they were -- whether there's just one there or there were four or -- it would appear that -- from the -- from the instruments that we've -- were able to locate for the four that we found there, that those are older; and probably they were there in '99. And in that case, I'd

9

either have to make a judgment or ask for clarification as to what was intended with regard to the pipeline.

THE COURT: Clarification from who?

THE WITNESS: From the buyer and seller. Or at the very least the agent that dealt with the two and prepared the sketch.
THE COURT: So, it may take some input to clarify from this to the legal description you end up with?

THE WITNESS: Yes, sir.

Roger Conway testified and produced business records on behalf of Sabine Title Company, the title company that handled the 2014 transaction and the title company that changed the description of the Property. He testified he has worked for Sabine Title for many years and is familiar with title policies that require deed corrections. He stated Sabine Title was approached in 2014 by Stevenson and Dean to close their transaction on the Property. Sabine Title Company discovered a problem with the Property description in the 1998 Deed. He stated that to his knowledge no one at Sabine Title ever told Stevenson or Dean that they needed to contact Winfree about the problem with the Property description in the 1998 Deed. Conway believed the error in the legal description was a clerical error and Winfree did not need to be contacted. But Conway admitted generally that if there is a nonmaterial or material correction of a deed, the original owner should be notified of the change. Conway confirmed that Winfree was not contacted or notified when the 2014 changes were made to the legal description of the Property. Conway

10

testified that Sabine Title Company did not hire a new surveyor in the 2014 transaction to survey the Property with the new legal description, and Conway was unaware who created the new calls in the 2014 Deeds.

At the conclusion of a bench trial, the trial court found that the Property that was described in the 2014 Deeds altered the legal description of the Property as conveyed to Davis in the 1998 Deed and the "legal description was intentionally changed and said change was a material correction requiring execution by the original grantor, WILLIAM EDWARD WINFREE, which was not obtained, and said [2014] deeds fail to comply with Section 5.029 of the Texas Property Code." The trial court further found that the Appellants were prohibited by a four-year statute of limitations from seeking to change the legal description of the Property in the 1998 Deed and ordered the legal description of the property conveyed in 2014 to comply with the legal description of the Property as described in the 1998 Deed. Finally, the trial court ordered Appellants to pay Winfree's "reasonable and necessary" attorney's fees for trial and any subsequent appeals in the amount of $15,000 and $20,000, respectively. Davis, Dean, and Stevenson filed a request for findings of fact and conclusions of law. The trial court filed its findings of fact and conclusions of law. Davis, Dean, and Stevenson also filed a motion for new trial, which was overruled as a matter of law. Davis, Dean, and Stevenson timely filed this appeal.

11

**Issue One**

In their first issue, Appellants argue that the evidence is legally and factually insufficient to demonstrate "that the discrepancies between the 1998 Deed and the 2014 Deeds divested [Winfree] of ownership in the disputed section of the pipeline right-of-way at issue." Appellants argue that no matter which legal description is used, either the 1998 or 2014 description, the pipeline right-of-way falls within the Property.

**Standard of Review**

In an appeal from a bench trial, an appeals court reviews a party's legal sufficiency challenge under the same standards that are applied to the review of a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When reviewing a finding for legal sufficiency, we credit the favorable evidence if a reasonable factfinder could and disregard the contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). On review, the appeals court will sustain a no-evidence point if:

> (1) the record discloses a complete absence of evidence of a vital fact[,] (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact[,] (3) the evidence offered to prove a vital fact is no more than a mere scintilla[,] or (4) the evidence establishes conclusively the opposite of the vital fact.

*Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003); *see also City of Keller*, 168 S.W.3d at 810. In addition, the trial court, which acted as the factfinder,

12

determined which of the witnesses who testified were credible and decided what weight it wished to assign to the evidence admitted during the trial. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986); *City of Keller*, 168 S.W.3d at 819.

While we review the factual findings that a trial court makes following a bench trial in the light that is most favorable to its verdict, we review the trial court's legal conclusions using a de novo standard. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Nonetheless, if a party demonstrates in an appeal that the trial court erred, the trial court's judgment will not be reversed if the record from the trial shows that the trial court, despite its error, reached the proper judgment. *Id*. Additionally, where the trial court's findings are incomplete on a party's claim, but the trial court made findings in favor of the prevailing party on one or more elements of its claim, we imply that the trial court would have found in favor of the prevailing party on any remaining elements of the prevailing party's claim if the losing party has not filed a written request for additional findings. *See Man Indus. India, Ltd. v. Midcontinent Express Pipeline, LLC*, 407 S.W.3d 342, 351 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *see* Tex. R. Civ. P. 299; *Park v. Payne*, 381 S.W.3d 615, 618-19 (Tex. App.—Eastland 2012, no pet.).

**Analysis**

We begin by deciding whether the parties complied with Section 5.028 or 5.029 of the Texas Property Code when the Property description in the 2014 Deeds

conveyed property that was not as described in the 1998 Deed. *See* Tex. Prop. Code Ann. §§ 5.028, 5.029. Section 5.028 and section 5.029 of the Texas Property Code address deed corrections. *Id*. Section 5.028 demonstrates how to correct a deed if the there is a nonmaterial change to the deed, while section 5.029 addresses how to correct a deed with a material change. *Id.*

A *nonmaterial change* under section 5.028 includes the following:

(a) A person who has personal knowledge of facts relevant to the correction of a recorded original instrument of conveyance may prepare or execute a correction instrument to make a nonmaterial change that results from a clerical error, including:

(1) a correction of an inaccurate or incorrect element in a legal description, such as a distance, angle, direction ...; or

(2) an addition, correction, or clarification of:

(A) a party's name, including the spelling of a name, a first or middle name or initial, a suffix, an alternate name by which a party is known, or a description of an entity as a corporation, company, or other type of organization;

(B) a party's marital status;

(C) the date on which the conveyance was executed;

(D) the recording data for an instrument referenced in the correction instrument; or

(E) a fact relating to the acknowledgment or authentication.

Tex. Prop. Code Ann. § 5.028(a).

Under section 5.029 a *material change* includes

14

(a) In addition to nonmaterial corrections, including the corrections described by Section 5.028, the parties to the original transaction or the parties' heirs, successors, or assigns, as applicable may execute a correction instrument to make a material correction to the recorded original instrument of conveyance, including a correction to:

> (1) add:

>> (A) a buyer's disclaimer of an interest in the real property that is the subject of the original instrument of conveyance;

>> (B) a mortgagee's consent or subordination to a recorded document executed by the mortgagee or an heir, successor, or assign of the mortgagee; or

>> (C) land to a conveyance that correctly conveys other land;

> (2) remove land from a conveyance that correctly conveys other land; or

> (3) accurately identify a lot or unit number or letter of property owned by the grantor that was inaccurately identified as another lot or unit number or letter of property owned by the grantor in the recorded original instrument of conveyance.

*Id*. at 5.029(a).

It is undisputed that the metes and bounds description of the Property in the 1998 Deed does not return to the point of beginning. It is also undisputed that there were changes made to the legal description of the Property in the 2014 Deeds and the descriptions do not match. We conclude that the legal description used in the 2014 Deeds goes beyond "a correction of an inaccurate or incorrect element in a legal description, such as a distance, angle, direction[]" as contemplated and codified

15

by the legislature in section 5.028. *See Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) ("presuming that the Legislature intended for each of the statute's words to have a purpose and that the Legislature purposefully omitted words it did not include"). Instead, the changes made to the Property description in the 2014 Deeds constitute a material change under section 5.029 as the changes to the call signs and distances added "land to a conveyance that correctly conveys other land[.]" Tex. Prop. Code Ann. § 5.029(a)(1)(C). While there may have been changes to only 2 of the 8 calls used in the property description, the changes push the northern boundary across the pipeline right-of-way which was used as a landmark on the northeast boundary of the Property and extended the Property 75 to 100 feet past the pipeline right-of-way. "A permissible purpose of a correction instrument is to provide the parties an avenue for correcting an 'ambiguity or error that relates to the description of *or extent of the interest conveyed*.'" *Endeavor Energy Res's. LP. v. Anderson Est.,* 644 S.W.3d 212, 222 (Tex. App.—Eastland 2022, pet. filed) quoting Tex. Prop. Code Ann. § 5.027(a) (emphasis original).

Recently, the Texas Supreme Court addressed correction deeds when the correction deed attempts to make a material change as it does in this case. The Court noted:

> The error here is material, and thus the correction instrument must comply with 5.029. That section provides in pertinent part that an instrument to correct a material error "must be":

16

(1) executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct *or, if applicable*, a party's heirs, successors, or assigns; and

(2) recorded in each county in which the original instrument of conveyance that is being corrected is recorded.

Thus, an instrument intended to correct a material mistake must be executed by each party to the original transaction, or by an appropriate alternate, and recorded in the relevant county to be a valid "substitute for the original instrument."

*Broadway Nat. Bank v. Yates Energy Corp.*, 631 S.W.3d 16, 22 (Tex. 2021) (internal citations omitted) (emphasis original).

When Davis sold the Property in 2014 to Stevenson and Dean, the title company on its own initiative altered the call signs in the Property description allegedly trying to "correct" the description of the Property contained in the 1998 Deed. The so-called correction was accomplished according to the record, by changing two of the calls in the 1998 Deed and moving those calls farther out into the marsh land abutting the southwest border of the Property. However, the evidence at trial showed that the movement of the two calls shifted the north and northeast corner of the Property to the northern side of the pipeline right-of-way and into the Parent Tract owned by Winfree. Testimony and exhibits were admitted showing that the 2014 changes to the property description encroached on Winfree's Parent Tract and areas that were not conveyed to Davis by Winfree in the 1998 Deed. Testimony also established that when the legal description of the Property was changed in 2014,

17

Winfree was never contacted, and he was not a party to the changes in the call signs as required by section 5.029. Because the 2014 Deeds did not include Winfree in any capacity or bear his signature as required by section 5.029, the trial court did not err in finding the 2014 Deeds void to the extent that they conflicted with the Property description in the 1998 deed. Recently our sister court thus explained the extent of a correction deed and its powers to rectify errors:

> The execution of a correction deed itself, without more, does not constitute a sale or *conveyance* of real property. In fact, a correction deed conveys nothing; it simply "replaces and is a substitute for the original instrument." A permissible purpose of a correction instrument is to provide the parties an avenue for correcting an "ambiguity or error that relates to the description of *or extent of the interest conveyed*."

> The policy underlying this statutory scheme is similarly clear: if all original parties to a transaction (or an original party's heir, successor, or assign) agree that, because of a mistake, the original conveyance failed to accurately capture the purpose and intent of their transaction, they may later correct the mistake by utilizing the avenues and remedies that are provided in the Correction Instrument statutes. As our supreme court has stated, this correction-by-agreement remedy is a nonjudicial process that is designed to promote efficiency in non-adversarial circumstances.

*See Endeavor Energy,* 644 S.W.3d at 222-23 (internal citations and quotations omitted) (emphasis original) (reversing a court of appeals because the correction deed satisfied section 5.029 and therefore was not invalid); *see also Offord v. Carson*, No. 01-19-00815-CV, 2021 WL 3358023, at *9 (Tex. App.—Houston [1st Dist.] Aug. 3, 2021, no pet.) (mem. op.) (concluding a change was a material change on a correction deed, did not comply with section 5.029, and as such the correction

deed was invalid and was to be removed as a cloud on the title). The 2014 Deeds were not "correction deeds" but were conveyance instruments that purported to convey more property than Davis held under the 1998 Deeds. Appellants failed to comply with the requirements of section 5.029. Therefore, we overrule appellant's first issue.[4]

### Issue Two

In their second issue, Appellants argue that the trial court erred as a matter of law concluding that Gene Davis Sand & Materials, Davis, Dean, and Stevenson were barred by the statute of limitations from challenging the legal description of the 1998 deed. Davis, Dean, and Stevenson argue that they were informed prior to Dean and Stevenson's purchase of the Property that all issues with the 1998 deed's legal description had been resolved. Particularly, Dean and Stevenson argue that because

---

[4] Appellants argue in their brief that the trial court's judgment is void because the 1998 deed does not return to the point of beginning and therefore the land cannot be identified with reasonable certainty. We disagree. Generally, descriptions of real property in judgments should be "so definite and certain ... that the land can be identified with reasonable certainty[ ]" so that the property at issue can be identified or the judgment is void. *Greer v. Greer*, 191 S.W.2d 848, 849 (Tex. 1946). Texas law requires the description to identify the property with reasonable certainty but does not require mathematical certainty. *Templeton v. Dreiss*, 961 S.W.2d 645, 659 (Tex. App.—San Antonio 1998, pet. denied). A legal description is generally sufficient if "'a surveyor could go upon the land and mark out the land designated.'" *Wooten v. State*, 142 Tex. 238, 177 S.W.2d 56, 57 (Tex. 1944). Here, testimony at trial established that Anderson was able to use both of the deed descriptions in the 1998 deed and the 2014 deed to locate the property described in each deed, and to plot and produce a survey showing each tract of land, and that survey was produced and admitted at trial.

they did not incur any legal injury until February 2019, when Winfree filed suit asserting ownership of the section of the pipeline right-of-way at issue, Dean and Stevenson are not barred by the four-year statute of limitations from challenging the 1998 deed's legal description.

In *Broadway*, the Texas Supreme Court explained that attempting a deed reformation through judicial process is governed by a four-year statute of limitations. *Broadway*, 631 S.W.3d at 27-29; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."). The Texas Supreme Court explained that the statute of limitations applies to "'[a] plainly evident omission on an unambiguous deed's face'" and the limitations will not be tolled. *Broadway*, 631 S.W.3d at 29 (quoting *Cosgrove v. Cade*, 468 S.W.3d 32, 36-37 (Tex. 2015)).

*Broadway* notably distinguished between deed reformation in a judicial process and a nonjudicial statutory process. *Id.* at 28-29. The Court explained that although parties are limited under a judicial reformation by a four-year statute of limitation, in a non-judicial reformation, such as under section 5.028 or 5.029 of the property code, there is no statute of limitations. *Id.* ("the Legislature gave parties the ability to correct material mistakes in their deeds without resorting to lawsuits for

20

reformation or rescission. Enforcing a correction instrument that complies with the Property Code therefore is not a judicial reformation of the original conveyance").

Generally, purchasers of real property are immediately charged with knowledge of all defects in the deed conveying title to the purchased property, though this presumption of immediate knowledge is rebuttable. *See Sullivan v. Barnett*, 471 S.W.2d 39, 45 (Tex. 1971). If the mistake is plainly evident or clearly disclosed on the face of the deed, all parties are chargeable with knowledge of the contents of the deed. *See Trahan v. Mettlen*, 428 S.W.3d 905, 909 (Tex. App.—Texarkana 2014, no pet.). The record shows the earnest money contract called for the northeast boundary of the Property to extend 25 feet into the cleared right-of-way. However, the 1998 deed, as well as the 2014 deed, expressly describe the northeast boundary of the Property (Call 6) as running "parallel with the Southwesterly [right-of-way] line of the said pipe line…" The original survey company representative, Anderson, testified that the original survey and property description did not go 25 feet into the pipeline easement. Therefore, as to Davis, the statute of limitations accrued from the date the 1998 deed was executed by Winfree as the record shows that deed was delivered to Davis on that same date.

Appellants acknowledge that the deed language in both the 1998 and 2014 deeds is "clear and unambiguous[,]" and they do not dispute that there is an error in the 1998 deed. As noted by the Supreme Court in *Cosgrove*, a clear and

21

unambiguous error is not one that tolls the statute of limitations *See Cosgrove*, 468 S.W.3d at 36 ("A plainly evident omission on an unambiguous deed's face is not a type of injury for which the discovery rule is available."); *see also Broadway*, 631 S.W.3d at 29. Dean and Stevenson do not dispute they discovered the error in the 1998 deed in 2014 during the sale from Davis to Dean and Stevenson. It is not disputed that Appellants then attempted to correct the error with a material change in the legal description used in the 2014 Deed without notice to Winfree, which is in violation of section 5.029 of the Property Code. *See* Tex. Prop. Code Ann. § 5.029. In 2018, Winfree discovered the 2014 deed correction and sued Appellants in 2019, alleging a claim for a suit to quiet title and asserting a declaratory judgment under the Declaratory Judgment Act. Appellants filed their countersuit against Winfree also seeking to quiet title and obtain a declaratory judgment alleging an error in the 1998 deed description in 2019, more than four years after the error in the deed description was discovered.[5] *Cosgrove*, 468 S.W.3d at 38 ("When it comes to obvious deed omissions, the accrual of a deed-reformation claim is not delayed."); *Maresh v. Martinez*, No. 13-20-00045-CV, 2021 WL 4597085, at *4 (Tex. App.— Corpus Christi-Edinburg Oct. 7, 2021, no pet.) ("[*Cosgrove's*] holding expressly

---

[5] Appellants have not pleaded nor do they argue the applicability of section 16.069 of the Texas Civil Practice and Remedies Code. Thus, any such claim is waived. *See Cole v. McWillie*, 464 S.W.3d 896, 903 (Tex. App.—Eastland 2015, pet. denied).

applies to both parties to a deed."). As such, section 16.051 of the Texas Civil Practice and Remedies Code bars all Appellants from judicially challenging the 1998 deed more than four years after the 2014 date of discovery. Tex. Civ. Prac. & Rem. Code § 16.051 ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."); *Broadway*, 631 S.W.3d at 27-29. We overrule Appellant's second issue.

### Issues Three and Four

In their final two issues on appeal, Appellants argue that the trial court erred in awarding attorney's fees to Winfree when he filed a suit to quiet title and the trial court erred by finding the fees were reasonable, necessary, equitable and included an award of appellate fees when they were unsupported by pleadings.

In his first amended pleadings, Winfree pleaded for both declaratory judgment under the Declaratory Judgment Act and a suit to quiet title. The declaratory judgment statute allows for the discretionary recovery of attorney's fees. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009. However, attorney's fees are not available in a suit to quiet title or to remove a cloud on title. *See Sani v. Powell*, 153 S.W.3d 736, 745 (Tex. App.—Dallas 2005, pet. denied). We look to the substance of the pleading to determine whether an action is a declaratory judgment suit or a suit to

23

quiet title. *Brumley v. McDuff*, 616 S.W.3d 826, 831-33 (Tex. 2021); *Offord*, 2021 WL 3358023, at *3.

In *Foreman v. Foreman*, our sister court described a suit to quiet title in this manner:

> A suit to clear title or quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property. A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property. [A] legal action to quiet title is traditionally one in which the superior title holder seeks to remove a challenge to that title.

*Foreman v. Foreman*, No. 01-20-00589-CV, 2022 WL 904446, at *3 (Tex. App.—Houston [1st Dist.] Mar. 29, 2022, no pet.) (internal citations and quotations omitted).

Contrast the above with a suit for declaratory judgment, which allows for the recovery of attorney's fees if a boundary dispute is the *sole issue* concerning the real property. *Eggemeyer v. Hughes*, 621 S.W.3d 883, 893-94 (Tex. App.—El Paso 2021, no pet.); Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004(c); 37.009 (emphasis added).

The trial court in its findings of fact and conclusions of law determined that Winfree was entitled to attorney's fees because "[t]he essence of the controversy between the Defendants and Winfree in this case, tried by consent by all parties, involved determining the proper boundary line between these two adjacent property owners." The essence of the suit involved title to property which encompassed

24

pipeline easements on the northeast boundary of the Property. None of the parties to the action had any concern over boundaries until one such boundary became monetized. Appellants argue that this case is not a boundary dispute because if you removed the two changed calls in the 2014 deed description that were in the marsh on the southwest side of the Property, Winfree would still dispute the parties' claim to the pipeline right-of-way which appellants claim was not changed by the 2014 deed description.

Our sister court addressed a similar issue in *Offord*. See 2021 WL 3358023, at *6. In *Offord*, the court explained that although the plaintiff had pleaded for a declaratory judgment, it was "in substance" a suit to quiet title. *Id*. The plaintiff was disputing the validity of a correction deed and asked the court to remove the correction deed and "remove the cloud on her title created by the invalid Correction Deed." *Id*. We are faced with similar circumstances here. This is a not a boundary dispute under a declaratory judgment action but a request by Winfree for the trial court to remove the cloud from his title caused by the 2014 warranty deed, i.e. a suit to quiet title. *Id*.

Winfree admitted in his petition that Appellants have not used any of the property outside the boundary lines of the 1998 deed or asserted any outward appearance in claiming rights to his property, only that he discovered the cloud on his property in 2018 that had been created by the 2014 deed. He discovered there

25

was an issue with his ownership when he was approached by an oil and gas company seeking to place a pipeline on his property and discovered the Appellants were "claiming ownership of a portion of property on the Northeasterly side of the right-of-way line." Although there was extensive testimony at trial regarding the boundary of the pipeline right-of-way, ultimately Winfree was not asserting ownership of Appellants' property, only that the 2014 deed description is invalid. Finally, we note that Winfree argued in his first amended petition that the parties did not provide notice of the 2014 deed corrections and are barred by statute of limitation on their counterclaims to litigate the property dispute, further establishing that the basis of his claim was a quiet title action and suit to remove a cloud on his property. *Moroney v. St. John Missionary Baptist Church, Inc*., 636 S.W.3d 698, 707 (Tex. App— Houston [14th Dist.] 2021, pet. denied) ("The Church's action is properly considered one to quiet title, and the quiet title claim was, admittedly, the 'basis for the declaratory judgment action.' The basis for the declarations sought was the purported invalidity of [appellant's] claimed interest in the property. Thus, attorney's fees were not recoverable under the Act as a matter of law."). As such Winfree was seeking a declaration of ownership of the property by removing the cloud of the 2014 deed description because it was invalid. *Id*. Therefore, the substance of Winfree's pleadings was substantially a suit to quiet title and not a suit

26

under the Declaratory Judgment Act regarding a boundary dispute. We sustain Appellants' third issue.

Because we sustain Appellants' third issue regarding the propriety of the trial court's award of attorney's fees, we need not address Appellants' fourth issue as to whether the attorney's fees were equitable, reasonable or just.

**Conclusion**

Having determined Appellants failed to comply with section 5.029 of the property code and that Appellants are barred by the statute of limitations from judicially disaffirming the 1998 deed, we overrule Appellants' first and second issues. We hold that the trial court erred in awarding Winfree attorney's fees in a suit to quiet title and sustain Appellants' third issue and reverse the last paragraph of the Judgment and render judgment that Winfree take no attorney's fees from Appellants. We affirm the remainder of trial court's judgment.

AFFIRMED IN PART, REVERSED AND RENDERED IN PART.

_____
CHARLES KREGER
Justice

Submitted on January 31, 2022
Opinion Delivered August 4, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.

27